Erie, Fulton, Huron, Lucas, Ottawa, Sandusky,
Williams and Wood Counties
Hon. Peter M. Handwork, P.J.,
Hon. Charles D. Abood, Hon. George M. Glasser
Hon. Melvin L. Resnick

**State
v.
Fenton**
*[Cite as 4 AOA 167]*

*Case No. OT-88-53
Ottawa County, (6th)
Decided June 29, 1990*

*Lowell S. Petersen, Prosecuting Attorney, and
Barbara Petersen, for Appellee.*

*Michael W. Sandwisch, for Appellant.*

ABOOD, J.

This is an appeal from a judgment of the Ottawa County Court of Common Pleas which found defendant-appellant, Raymond Fenton guilty, following a jury verdict, of rape in violation of R.C. 2907.02(A) (1) (b) and (A) (2). Appellant has appealed setting forth the following assignments of error:

"1. The Trial Court erred to the prejudice of the Defendant in allowing into admissions evidence of prior alleged sexual incidents between the alleged victim and the Defendant.

"2. The Trial Court erred to the prejudice of the Defendant in finding the alleged victim to be competent to testify.

"3. The Trial Court erred to the prejudice of the defendant in allowing the alleged victim's mother to testify as to statements made by the alleged victim not testified to by the alleged victim.

"4. The Trial Court erred to the prejudice of the Defendant in failing to grant him an Order allowing him to review the Grand Jury testimony of the alleged victim.

"5. The Trial Court erred to the prejudice of the Defendant in allowing the testimony of the State's expert witnesses and by failing to grant a mistrial after the State's witnesses testified that it was the Defendant that was the alleged victim's assailant.

"6. The manifest weight of the evidence does not support a finding of guilty beyond a reasonable doubt.

"7. The State's numerous attempts to present inadmissable *[sic]* and prejudicial information to the jury amounted to Prosecutorial misconduct and the Defendant's motions for mistrial should have been granted.

"8. The Trial Court erred to the prejudice of the Defendant in instructing the jury as to the lesser included offenses and as to the definition of force.

"9. Ohio's mandatory sentence of life imprisonment for forcible rape of a child under the age of thirteen is unconstitutional."

The facts giving rise to this appeal are as follows. Appellant began dating Lou Ann Pratt in the summer of 1979. In August 1979, appellant moved in with Lou Ann and her four-year-old daughter Sara Pratt and, in June 1980, appellant and Lou Ann were married. Two sons were born to their marriage. The family moved several times and in late 1983 or early 1984, they moved in to 130 1/2 West Water Street in Oak Harbor, Ohio. In July 1984, they moved again from 130 1/2 West Water Street to 116 East Water Street in Oak Harbor, where they resided until November 1985, at which time they moved in with Lou Ann's parents. In late 1985 or early 1986, Lou Ann and appellant separated. In January 1987, Lou Ann's mother died and shortly thereafter Lou Ann spoke to her three children of the possibility that she and appellant would reconcile. Upon hearing this Sara Pratt told her mother that she didn't want her to go back with appellant and when Lou Ann questioned her Sara indicated that she had been sexually abused by appellant. Lou Ann immediately reported these allegations to the authorities. An investigation was begun and Sara was referred to the Department of Human Services for examination and counseling.

On February 2, 1988, an indictment was filed charging that on or about a day in the period between July 1, 1984, and August 30, 1984, in Ottawa County, appellant had compelled Sara to engage in sexual conduct with him by force and that Sara was less than thirteen years of age at the time, in violation of R.C. 2907.02. On February 8, 1988, appellant was appointed counsel and on February 16, 1988, he was arraigned and entered a plea of not guilty. On March 22, 1988, a hearing was held in chamber pursuant to R.C. 2907.02(D) and (E). On March 23, 1988, the trial court issued a judgment entry finding that the defendant did not intend to offer evidence of the victim's sexual activities. The court found the state did intend to offer evidence of appellant's sexual activities by way of specific instances occurring prior to those alleged in the indictment involving the victim pursuant to R.C. 2945.59 and that such evidence was material to the facts at issue and that the probative value of such evidence outweighed any inflammatory or prejudicial nature of the same. On April 15, 1988, the indictment was amended, and appellant entered a plea of guilty to the lesser charge of rape without the force specification. On July 21, 1988, appellant's attorney withdrew, and appellant was assigned substitute counsel. On August 3, 1988, appellant filed a motion requesting the court to allow him to withdraw his prior guilty plea to the amended indictment and the state filed a motion requesting the trial court to reinstate the original indictment in the event that appellant's motion to withdraw his prior guilty plea was granted. On August 8, 1988, the trial court held a hearing on the motions and on August 10, 1988, granted appellant's motion to withdraw his prior guilty plea and the state's motion to reinstate the original indictment and appellant entered plea of not guilty.

On August 25, 1988, the trial court appointed counsel to represent the victim Sara pursuant to R.C. 2907.02(F). On September 30, 1988, an additional hearing was held in chambers pursuant to R.C. 2907.02(E) and on October 12, 1988, the trial court filed a judgment entry, again finding that appellant had decided not to introduce evidence of specific instances of the victim's sexual activity or opinion or reputation evidence of such activity and that the state intended to introduce special instances of appelant's sexual activities with the victim pursuant to R.C. 2945.59 and 2907.02. Following a summary of the particulars of such evidence, the trial court found the evidence to be admissible at trial and that its inflammatory or prejudicial nature did not outweigh its probative value. The case came on for jury trial on October 17 and continued through October 21, 1988.

On October 18, 1988, appellee filed a request for a special jury instruction on the element of force. On October 20, 1988, appellant filed a request for jury instructions requesting the trial court to instruct the jury on the lesser included offenses of sexual battery, attempted rape, and gross sexual imposition. The trial court agreed to give the special instruction on force with two changes and agreed to instruct the jury on rape, attempted rape, and sexual battery, but found gross sexual imposition not to be a lesser included offense. On October 21, 1988, the jury re-

turned its verdict finding appellant guilty of rape as charged in the original indictment in violation of R.C. 2907.02(A) (b) and (A) (2). On November 9, 1988, at appellant's request the trial court held a hearing on the constitutionality of the sentence prescribed by R.C. 2907.02(B). On November 10, 1988, the trial court filed its judgment entry finding that the sentence provision was not in violation of the Eight Amendment of the United States Constitution or the Ohio Constitution which ban cruel and unusual punishment and sentenced appellant to life imprisonment.

On December 9, 1988, appellant filed his notice of appeal.

In his first assignment of error appellant asserts that the trial court erred in admitting evidence of alleged prior sexual incidents between himself and the victim. Appellant argues that the prejudicial nature of such evidence outweighs its probative value. Appellant argues further that some of the evidence admitted was not offered at the hearing of August 30, 1988, as required by R.C. 2907.02(E).

Appellant asserts that the evidence was properly admitted under R.C. 2907.02 and 2945.59, and was both relevant and material to show that the acts charged were not the results of inadvertence or mistake and that his motive and intent was to purposely compel the sexual conduct by force or threat of force.

R.C. 2907.02(D) provides in pertinent part:
"(D) * * *
"Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59[1] of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

Prior to receiving any such evidence, the trial court must resolve the issue of admissibility at a hearing held in chambers. R.C. 2907.02(E).

Pursuant to the statute, the trial court held an *in camera* hearing to determine whether either party intended to introduce any such evidence and, if so, the admissibility of that evidence. At the hearing counsel for appellant indicated that he did not intend to offer any

evidence of specific instances of the victim's sexual activity or opinion or reputation evidence of her sexual activity. Appellee indicated that it did intend to introduce evidence of specific instances of appellant's sexual activity with respect to the victim arguing that such evidence was material to the facts in issue specifically the use of force and the identity of appellant, and necessary to establish appellant's motive and intent, the absence of mistake on his part and a continuing course of conduct beginning when the victim was eight and continuing up until the period of time specified in the indictment and possibly subsequent to that time. Appellee indicated that these acts involved fellatio and anal intercourse, all occurring when the victim's mother was absent from the premises. Appellant argued that the evidence of these specific acts should be limited to those occurring prior to the time specified in the indictment. The trial court found that the acts referred to by appellee which allegedly occurred prior to the date of the offense alleged in the indictment and in the bill of particulars were material to the facts in issue herein and that the inflammatory and prejudicial nature of the evidence did not outweigh its probative value.

At trial this evidence of specific instances of appellant's past sexual activity with the victim was introduced through the testimony of Sara Pratt, the victim. Sara testified that the first such instance she could recall occurred when she was in third grade, approximately eight or nine years old, when appellant approached her, unzipped his pants and "made her suck his penis." Sara testified further that appellant then put vaseline on his penis and "stuck it in her bottom." Sara testified that appellant told her this was punishment for an incident at school in which she had been accused of stealing. Sara testified that the same thing occurred about twice a month, whenever her mother was gone from the home, and that appellant told her that he would kill her if she told anyone.

Our review of the record indicates that the evidence admitted at trial of other specific instances of appellant's sexual activity with the victim was of instances which occurred within the time frame specified by the trial court and conformed with the evidence that appellee indicated it would present at the *in camera* hearing. Appellant's assertions otherwise are without merit. Upon consideration and review of the specific evidence in question, this court finds that it was material to facts at issue, specifically, that

appellant did purposely compel Sara to submit to sexual conduct by force or threat of force, and that its probative value clearly outweighed any inflammatory or prejudicial effects. Accordingly, appellant's first assignment of error is found not well-taken.

In his second assignment of error appellant asserts that the trial court erred in finding Sara competent to testify. Appellant argues that Sara was unable to accurately account for dates and locations of the various residences where the alleged offenses occurred and did not seem to recollect very much as to other important events occurring during the same time period.

Appellee argues that Sara was thirteen years old at the time of trial and therefore presumed to be competent to testify pursuant to Evid. R. 601(A). Appellee explained that since Sara was less than ten years old when the alleged acts took place the trial court went through the procedure of determining her competence and found that she was competent to testify. Appellee argues further that appellant did not demonstrate that the trial court abused its discretion in finding Sara competent to testify.

Evid. R. 601 provides in pertinent part:

"RULE 601. General Rule of Competency

"Every person is competent to be a witness except:

"(A) Those of unsound mind, and children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly and;* * *" See, also, R.C. 2317.01.

A trial court's determination of competency will not be disturbed on appeal absent a demonstration that the trial court abused its discretion. *State* v. *Bradley* (1989(, 42 Ohio St. 3d 136.

The record demonstrates that at the time of trial Sara was thirteen years old. The trial court, however, did conduct a brief competency hearing prior to Sara being called as a witness since the alleged acts of appellant would have occurred prior to her being ten years old. The trial court examined her as to her ability to understand the obligation of truthfulness and her ability to recollect and to communicate events which occurred in her life from 1984 on. Counsel for appellant also examined Sara. At the conclusion of the examination the trial court found Sara competent to receive a just and accurate understanding of the facts and transactions relating to that to which she would testify and to relate them truthfully in her testimony.

In light of the foregoing facts and the law, this court finds that appellant has failed to demonstrate that the trial court abused its discretion in determining that Sara was competent to testify at trial. Accordingly, appellant's second assignment of error is found not well-taken.

In his third assignment of error appellant asserts that the trial court erred in permitting Sara's mother to testify as to statements made to her by Sara. Specifically, appellant argues that the trial court improperly admitted under the excited utterance exception to the hearsay rule, statements which were made by Sara to her mother over four years after the alleged abuse began and almost a year after it ended.

Appellee argues that, even though the statements made by Sara to her mother were made an indeterminate number of months after the last sexual conduct by appellant, the record demonstrates that at the time of the statement Sara was still under the emotional influence of these events and the nervous excitement brought on by her mother's suggestion that she and appellant might reconcile, and that these statements were unreflective expressions of her actual impressions and beliefs.

Evid. R. 803 provides in pertinent part:

"Hearsay Exceptions; Availability of Declarant Immaterial.

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

"2. Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

In *State* v. *Wallace* (1988), 37 Ohio St. 3d 87, 89, the Supreme Court of Ohio set forth the four-part test to be applied in determining what constitutes an excited utterance:

"The excited-utterance exception is essentially a codification of Ohio common law governing spontaneous exclamations. At common law, this court applied a four-part test in determining what constituted a spontaneous exclamation:

"(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,

"(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination *continued* to remain sufficient to make his statements and declaration the unreflective and sincere expression of his actual impressions and beliefs,

"(c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and

"(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." *Potter* v. *Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E. 2d 140, paragraph two of the syllabus (followed and approved in *State* v. *Duncan* [1978], 53 Ohio St. 2d 215, 7 O.O. 3d 380, 373 N.E. 2d 1234, paragraph one of the syllabus). (Footnote omitted.)

The admissibility of statements under the excited utterance exception to the hearsay rule is to be determined by the individual circumstances of each case; there is no strict rule as to the time frame between the startling event and the declaration, the focus of inquiry being rather whether the declarant was still under the influence of the startling event to such an extent that the statement could not have been the product of reflective thought. *State* v. *Wallace, supra; State* v. *Wagner* (1986), 30 Ohio App. 3d 261. The resolution of these factual issues is within the province of the trial judge and the decision will not be disturbed on appeal if the record demonstrates that it was reasonable under all the circumstances. *Potter, supra; State* v. *Duncan* (1978), 53 Ohio St. 2d 215.

In this case, the statements admitted by the trial court as excited utterances were statements made by Sara to her mother in January 1987. Lou Ann testified that she and appellant had been talking about getting back together and she decided to speak with her children about it. She testified that she initiated this conversation approximately two weeks after her mother's death. At the time, she observed that Sara was nervous and very distressed over the loss of her grandmother and when she announced that she and appellant were considering reconciling, she testified that Sara became very angry, jumped up so forcibly that she knocked her chair over, slammed her fist on the table, screamed and ran out of the room. Lou Ann's testimony continued as follows:

"Q. Okay. After she reacted in this fashion, did she state anything to you?

"MR. SANDWISCH: Objection, Your Honor. May we approach the bench?"

"Whereupon, the following conference was held at the bench:

"MR. SANDWISCH: I object to the offering of this testimony at this time because it is clearly hearsay, and the only potential one that I can even imagine would be the excited utterance one, and the testimony is clearly -- it is clear that the occurrence occurred in July, and the incident that allegedly has brought this statement out is the grandmother's death, not another incident of sexual abuse.

"It is the grandmother's death that is alleged to have created this statement, and, therefore, under the excited utterance exception it doesn't apply, because it has to be tied into the same act, and the grandmother's death, and in the case of sexual abuse, has no correlation.

"MR. WARGO: First of all, Mr. Sandwisch is correct that we feel it is under the excited utterance section. However, this was brought on by Lou Ann's relating to Sara that she had intentions of getting back together with the Defendant, Butch Fenton.

"She was very nervous and very upset over the grandmother's death, yes, but it was upon the revelation that she had intentions of getting back together with Butch that Sara exploded from the kitchen table.

"As far as the time frame, the State if relying on the case of State vs. Negofka, N-e-g-o-f-k-a. It is a Court of Appeals case, District Court of Appeals of Cuyahoga County, concerning excited utterances. Even though the utterance was months, in this case, months after the event.

"THE COURT: Mr. Sandwisch.

"MR. SANDWISCH: IF I could, in terms of the time frame, this particular case is much different on point than that one. This is not months. We are talking about three years.

"Secondly, as far as the difference between the grandmother's death or the discussion of potentially getting back together with the father, it still is not tied in to a specific incidence or even the original incident of sexual abuse. It is tied in with a totally different subject.

"THE COURT: Would you explain what you mean by three years on this case?

"MR. SANDWISCH: The indictment alleges '84 as being the time frame when the occurrence happened. Okay. All the discovery I have received shows nothing beyond '84, and this was

stated to the mother in January of '87, so even if you go with July of '84, you are talking two and a half years. You are not talking three months.

"MR. WARGO: I think this case stands for the proposition that there can be a delay in time between the happening of the event and the excited utterance, and I think the key is that, as I indicated, the statement by the mother that that intention of reconciling and getting back together, and that in and of itself is tied into what we are here before the Court on and not tied into the grandmother's death.

"THE COURT: Mr. Sandwisch, I am going to overrule your objection and allow the testimony in over objection.

"Okay.

"Whereupon, the bench conference was concluded."

Whereupon, the court reporter read back the previous question.

"A. Yes, she did. She stated that if Butch and I got back together, she would leave.

"Q. Okay, Did she state anything else at that time as to why she would leave?

"MR. SANDWISCH: Your Honor, may I state for the record, just so the record is clear, I have a continuing objection on many same grounds that we discussed.

"THE COURT: Let the record so show a continuing objection.

"MR. SANDWISCH: Thank you.

"A. I asked her first why she hated Butch so much and told her there had to be some other reason that just him leaving and --

"THE COURT: Just a minute now.

"MR. Sandwisch, you have a continuing objection. As I understand it now, we are having testimony as to what someone else said in response to a question. Now are you still claiming excited utterance, Mr. Wargo?

"MR. WARGO: Yes, Your Honor.

"MR. SANDWISCH: I still maintain my objection that it is hearsay, Your Honor. My objection goes back to the very first statement.

"THE COURT: I am going to sustain your objection at this point, because I don't feel this is an excited utterance in response to a question. The other portions of her testimony stand. They are on the record to be considered.

"Q. At the time that you asked Sara the question, was she still upset? Had she displayed to you before --

"A. Yes.

"Q. Was she still out of her chair?

"A. Yes.

"Q. How soon after her initial statement that she would -- or initial statement, utterance, that she would leave the household, was it before you asked the question, 'Why?'

"A. Almost immediately I asked her, 'Why do you hate him so much?'

"Q. Okay. And this was immediately after she had explained to you that she would leave the household?

"A. Yes.

"Q. Okay. In terms of a time frame, can you tell the Court and jury how long in terms of hours, minutes, seconds, this was in transpiring?

"A. Maybe 15 seconds.

"Q. Okay. And after you asked her why, what did she state?

"MR. SANDWISCH: Objection, Your Honor, the Court has already sustained.

"THE COURT: Based on the foundation laid by the State, the Court is going to allow this testimony to come in. Overrule your objection.

"You may testify.

"A. She didn't say anything. She just hung her head and gripped her hands together (indicating). I asked her, 'Sara, did Butch touch you?'

"Q. Okay. Now before you go any further, how long of a period of time transpired between the time that you asked the question why an you asked the question, "Did Butch touch you?'

"A. Maybe 30 seconds.

"Q. Okay. You indicated that she had her fist clenched?

"A. Yes.

"Q. Did she remain in this type of a posture?

"A. Yes.

"Q. Did her physical makeup change in any other respect.

"A. She just squeezed her eyes shut.

"Q. At that point what did she say?

"MR. SANDWISCH: Objection, Your Honor. May we approach the bench?

"THE COURT: You may.

Whereupon, the following conference was held at the bench:

"THE COURT: Mr. Sandwisch.

"MR. SANDWISCH: Yes, Your Honor. I continue to maintain my prior rationale of reasoning for the objection, but at this point in time I further delve into the issue that we are not dealing with excited utterances that are voluntarily being given by the child, but now we are dealing with inquisitive nature of the mother. The mother is asking questions to get the child to make a statement, so I think at that point in time we are no longer with excited utterance.

Now we are dealing with conversations. Even though she was nervous, the child didn't offer it on her own.

"THE COURT: Mr. Wargo.

"MR. WARGO: I would hardly think we are talking in terms of a conversation. I think this was a very emotional time for Sara, as has been described by Lou Ann, and the fact that there is any type of question, I don't see it is a questioning or a prompting type of dialogue. I think it is more of a natural reaction in terms of, you know, what happened, why did it happen, why do you feel this way, as opposed to a dialogue between the two.

"THE COURT: I don't seek any difference between this objection and the last one. I am going to overrule the objection and allow it in.

"MR. SANDWISCH: Okay. For the record, though we have -- so I don't have to continuously interrupt him, I am going to continue the objection.

"THE COURT: Let the record note your continuing objection.

Whereupon, the bench conference was concluded.

"Q. Lou Ann, you have indicated that you asked Sara, I believe your statement was that, 'Did Butch touch you?'

"A. Yes.

"Q. What was her response?

"A. How do you mean? I asked her, 'Did he touch you sexually?'

"She shook her head yes.

"Q. Okay. Was that in total then the sum of your conversation or your discussions with Sara that particular day?

"A. No, I asked her how he touched her.

"Q. Was this during the same period of time that this other --

"A. Yes.

"A. -- this other conversation was going on?

"A. Yes.

"Q. How long after her response was it before you asked that question?

"A. About a minute.

"Q. Okay. What was her physical condition and makeup at that point?

"A. She was crying.

"Q. Okay. You indicated before that when, just prior to your questioning, she had her fist clenched?

"A. Her fist was actually clenched.

"Q. Was she still in that position?

"A. Yes.

"Q. Except now she had begun crying?

"A. Yes.

"Q. What did she indicate in response to your question?

"A. She said that he made her suck his dick.

"Q. Did she state anything else to you at that time?

"A. Not right at that moment."

The trial court, after hearing arguments from both sides, overruled the objection and permitted this testimony under the excited utterance exception to the hearsay rule.

This court recognizes that the trend has been to liberalize somewhat the requirements for the excited utterance exception to the hearsay rule, particularly the temporal ones in cases involving children who are victims of sexual abuse, where the children are so young that their limited reflective abilities and undeveloped capacity for speech often prohibits the communication until a much later time. *State* v. *Wagner, supra.* Here, Sara's statements were made in 1987. The testimony indicates that the alleged sexual abuse began around 1983 when Sara was eight or nine years old, four years prior to the date of her statements, and ended when appellant and Lou Ann separated in late 1985 or early 1986, approximately one year prior to the date of the statements to her mother. Upon consideration of the foregoing, this court finds that, given this extended length of time, it was not reasonable for the trial court to have applied the excited utterance exception to the hearsay rule to those statements. Even though the trial court erroneously admitted these particular statements into evidence, however, there was other overwhelming evidence of guilt, which consisted of Sara's own testimony of sexual abuse by appellant as well as her testimony to Dr. Cullen, describing appellant's conduct towards her. *State* v. *Rahman* (1986), 23 Ohio St. 3d 146; *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, 166. This court finds that the statements made by Sara to her mother were merely cumulative to other evidence in the record, and that their admission was harmless error beyond a reasonable doubt. *Rahman, supra; Ferguson, supra;* see, also *State* v. *Turner* (Mar. 23, 1989), Cuyahoga App. No. 55150, unreported; *State* v. *Jenkins* (July 2, 1986), Summit App. No. CA-12403, unreported; *State* v. *McCollum* (Apr. 14, 1989), Sandusky App. No. S-88-15, unreported. Accordingly, appellant's third assignment of error is found not well-taken.

In his fourth assignment of error appellant asserts that the trial court erred in failing to

allow him to review the grand jury testimony of Sara. During cross-examination of Sara, counsel for appellant requested that he be provided relevant portions of her grand jury testimony because the bill of particulars alleged three types of sexual conduct and Sara testified only as to two types.

Appellee argues that appellant failed to articulate how this alleged discrepancy gives rise to the need to see the grand jury testimony and how the trial court's denial of appellant's motion deprived appellant of a fair trial.

Crim. R. 6(E) provides in pertinent part:

"Deliberations of the grand jury and the vote of any grand juror shall not be disclosed. Disclosure of other matters occurring before the grand jury may be made to the prosecuting attorney for use in the performance of his duties. A grand juror, prosecuting attorney, interpreter, stenographer, operator of a recording device, or typist who transcribes recorded testimony, may disclose matters occurring before the grand jury, other than the deliberations of a grand jury or the vote of a grand juror, *but may disclose such matters only when so directed by the court preliminary to or in connection with a judicial proceeding*, or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." (Emphasis added.)

A defendant must demonstrate a "particularized need" for disclosure of grand jury testimony: *i.e*, the defendant must show on the basis of all the surrounding circumstances it is probable that failure to disclose the requested witness's testimony will deprive the defendant of a fair adjudication of the allegations put into issue by the witness's trial testimony. *State* v. *Greer* (1981), 66 Ohio St. 2d 139; *State* v. *Roberts* (1976), 50 Ohio App. 2d 237. The release of such testimony for use prior to or during trials is within the discretion of the trial court. *Greer, supra.*

Appellant seems to be asserting that because the bill of particulars specifies three separate acts and the testimony of the victim demonstrates only two sexual acts, he is entitled to her grand jury testimony. The indictment, following the statute, states that appellant engaged in sexual conduct with the victim. The bill of particulars states that appellant engaged in vaginal, anal and/or oral intercourse, in the alternative. Upon consideration thereof this court finds that the fact that the evidence at trial encompasses only two out of three sexual activities specified in the bill of particulars does not demonstrate a particularized need for appellant to be given access to the grand jury testimony of the victim and, therefore that the trial court did not abuse its discretion in denying appellant's motion. Accordingly, appellant's fourth assignment of error is found not well-taken.

In his fifth assignment of error appellant asserts that the trial court erred in permitting the state's two expert witnesses to testify, arguing that neither were properly qualified to testify as to the "psychological ramifications" of an abused child. Appellant also argues that the experts' opinions were no more than opinions as to the victims' credibility. Appellant also asserts that the trial court erred in failing to grant his motion for a mistrial after one of the experts testified that Sara was sexually abused and that it was by her stepfather. Appellant submits that no curative instruction could remove this prejudicial and inflammatory remark from the decision making process.

Appellee argues that the trial court did not abuse its discretion in finding both experts to be qualified. Appellee argues further that even assuming it was improper for Dr. Cullen to testify as to the identity of Sara's assailant, any error was cured by the trial court's curative instruction and order striking that part of Dr. Cullen's testimony from the record.

Evid. R. 702 permits the use of expert testimony and provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

A threshold determination must be made under Evid. R. 104(A), however, concerning the qualification of an individual to testify as an expert witness. *Kitchens* v. *McKay* (1987), 38 Ohio App. 3d 165. This determination is to be made by the trial court and the trial court's ruling with respect to a witness's qualification as an expert will not be disturbed unless there is a clear showing that the trial court abused its discretion. *Kitchens, supra; McCrory* v. *State* (1981), 67 Ohio St. 2d 99.

The first expert witness called by appellee was Dr. Bernard Joseph Cullen, who examined Sara for the purpose of diagnosis and treatment. Dr. Cullen testified that he is a pediatrician

licensed to practice medicine in the state of Ohio and is the director of the child abuse and neglect prevention program at Medical College of Ohio in Toledo. Dr. Cullen testified that he had been in private pediatric practice full-time from 1957 to 1977, when he became an assistant professor of pediatrics and the director of the prevention program at Medical College of Ohio. Dr. Cullen testified further that as the director of the prevention program, he has been exposed to instances of sexual child abuse on an average of five hundred plus cases, per year over the past fifteen years with a marked increase in cases over the past five years. Dr. Cullen testified that he frequently gives lectures and conducts workshops on the topic of child sexual abuse.

The state also called Christina McCullen as an expert. McCullen testified that she holds a bachelors degrees in biology and psychology and was in her fourth year as a doctoral student in clinical psychology. McCullen testified further that she was a psychology intern for Medical College of Ohio and had been for the past two years, specializing in child abuse, primarily sexual abuse, and that the internship involved the assessment and therapy of children suspected of being abused and neglected. McCullen stated that she has been involved with approximately two hundred cases. Finally, she testified that she was also part of the child protection team at Medical College of Ohio and attended approximately forty hours of continuing education and workshops in the field.

Upon consideration of the above testimony, this court finds that the trial court did not abuse its discretion in finding that both witnesses qualified to testify as experts.

This court will next address appellant's assertions that the trial court erred in admitting the testimony of these witnesses, since that testimony consisted merely of opinions as to Sara's credibility, and that it erred in permitting Dr. Cullen to testify that in his opinion Sara was sexually abused and that it was by her stepfather.

At trial Dr. Cullen testified that he conducted a physical examination of Sara, took her history, and interviewed her for diagnostic and treatment purposes. Dr. Cullen testified that although there was no corroborations of her assertions of sexual abuse this was not inconsistent with her description of appellant's alleged conduct especially considering her testimony that a lubricant was used and the length of time that had elapsed. Dr. Cullen testified further that, based upon information received from Sara and his examination, in his opinion she had in fact been sexually abused by her stepfather. Appellant objected to the entire testimony including the opinion testimony given by Dr. Cullen and moved for a mistrial based on his identification of appellant as the alleged assailant. The trial court found Dr. Cullen's opinion that Sara had been sexually abused admissible but struck that part of his opinion testimony regarding the identification of appellant as the abuser. The trial court then instructed the jury to disregard that portion of the testimony and to treat it as if they had not heard it and denied appellant's motion for mistrial.

McCullen testified at trial that she had interviewed Sara to determine if she required treatment or therapy and in doing so administered several psychological tests. McCullen testified that the results of the test indicated that Sara was experiencing significant depression, frustration and anger, that she may experience thoughts of self-harm, and that she demonstrated preoccupation with themes of love, marriage and infidelity, all of which would be consistent with a history of sexual abuse. McCullen indicated that, based upon her investigation, treatment was warranted because Sara displayed significant distress.

The Supreme Court of Ohio in *State* v. *Boston* (1989), 46 Ohio St. 3d 108, found that although it is not proper for an expert witness to testify on the question of the veracity of the victim's statement, it is proper for an expert to testify as to whether or not a child has been sexually abused based upon that expert's medical examination of the victim, the victim's statements to the expert and the victim's history. The *Boston* court reasoned that opinion testimony by an expert as to whether or not a child was sexually abused will assist the trier of fact in understanding whether the abuse has in fact occurred and, therefore, such evidence is admissible pursuant to Evid. R. 703 and 704. *Id.* at 128. See, also, *State* v. *Timperio* (1987), 38 Ohio App. 3d 156.

Upon consideration of the foregoing, this court finds that the trial court did not abuse its discretion in admitting the testimony of both expert witnesses including Dr. Cullen's testimony that Sara had been sexually abused. The court finds further that although the opinion testimony of Dr. Cullen as to who assaulted Sara was not admissible and that this admission was erroneous, the trial court sufficiently cured any error by

striking that portion of the testimony and giving a curative instruction to the jury. Accordingly, appellant's fifth assignment of error is found not well-taken.

In his sixth assignment of error appellant asserts that the guilty verdict reached by the jury was against the manifest weight of the evidence.

A reviewing court will not reverse a jury verdict as being against the manifest weight of the evidence if there is substantial evidence to form a basis upon which reasonable minds could conclude that every element of the offense has been proven beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169. In determining if the verdict of the jury is against the manifest weight of the evidence, the appellate court may not weigh the evidence or determine the credibility of the witnesses. *State* v. *Clay* (1973), 34 Ohio St. 2d 250, 251; *State* v. *DeHass* (1967), 10 Ohio St. 2d 230.

Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(b) and (A)(2) which read in relevant part:

"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when either of the following apply:

"* * *

"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of such person.

"(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

At trial Sara testified that on several occasions her stepfather, appellant, "made her suck his penis" and would put vaseline on his penis and "put it in her bottom." Sara testified that the first such incident she recalls occurred when she was in the third grade and had been accused of stealing at school and appellant had indicated that this was her punishment. The other incident Sara testified to occurred when her family was moving in July 1984 and she and appellant had gone back to the apartment from which they were moving to pick up some toys. Sara testified that when they were alone in the apartment appellant told her to "suck his penis," when she said she did not want to, appellant told her that if she refused or if she told anyone about it he would kill her. Sara testified that these incidents occurred once or twice a month and sometimes more whenever her mother was not at home.

Sara testified that after appellant would ejaculate in her mouth he would make her swallow it and sometimes she would throw up. Sara testified that she never told anyone because she was afraid appellant would kill her. Sara testified that she finally told her mother in January 1987 right after her grandmother had died when her mom told her that she and appellant were thinking of getting back together. Sara testified that she told her mother that she didn't want them to and when her mother asked her if appellant had touched her she told her everything that had happened. Sara also testified that one time appellant showed her pictures of naked women.

Also before the jury was the testimony of Dr. Cullen who, in addition to the testimony above, testified that when he examined Sara for evaluation and treatment she described the specific sexual interactions that had taken place between her and her stepfather, stating that "he made me suck his privates and put it up my butt"; he also testified that Sara told him of penetration and the vaseline used by appellant and that appellant "made her swallow it and he threatened to hurt me if I told. He threatened to kill me." Dr. Cullen said Sara told him that it happened in third grade and had happened many times.

Testifying for the defense were two friends of appellant, Ron Schiffert and Wanda McClellan. Schiffert testified that, although he didn't remember the year of the move, he recalls helping the family move and that he didn't recall appellant having the opportunity to be alone with Sara on the moving day. Schiffert testified that nothing ever occurred in his presence which would indicate that appellant sexually abused Sara. McClellan testified that she shared a home with appellant's family in October 1983, and from August 1984 to November 1984, and would sometimes baby-sit the children. McClellan testified that she also helped the family move in July 1984, and never saw anything to indicate that Sara had been abused by anyone.

Appellant took the stand to testify on his own behalf. Appellant testified that he did not sexually abuse Sara in any way or threaten to harm her, her mother or any other family member. Appellant testified that he was never alone with Sara on the date that they moved in July 1984, and did not return alone with her to the apartment from which they were moving. Appellant also testified that he never discussed reconciliation with Lou Ann.

After thoroughly reviewing the record herein, we are satisfied that there was substan-

tial evidence from which the jury could conclude that every element of the offense charged had been proven beyond a reasonable doubt. We find, therefore, that the jury verdict is supported by the evidence and, accordingly, appellant's sixth assignment of error is found not well-taken.

In his seventh assignment of error, appellant asserts that the trial court erred in failing to grant his motions for mistrial. Appellant argues that the cumulative effect of appellee's numerous attempts to present inadmissible and prejudicial information to the jury resulted in prejudice to him constituting prosecutorial misconduct.

Throughout the trial appellant made numerous objections to evidence and testimony of the various witnesses. Appellant also made numerous motions for mistrial on the basis that these admissions were prejudicial and that the evidence admitted which was subsequently ordered stricken by the court tainted the jury so that he did not receive a fair and impartial trial. The trial court denied each motion for mistrial, stating that in each of the instances that testimony was determined to be inadmissible but was already in evidence, it had instructed the jury to disregard that evidence and therefore any potential error had been cured and found no prejudice to appellant.

A mistrial will be declared where there is a "manifest necessity to do so," or in order to "serve the ends of public justice," *State* v. *Abboud* (1983), 13 Ohio App. 3d 62. The determination of whether a mistrial is warranted rests within in the sound discretion of the trial court. *Id.*

Upon review of the record, including the numerous objections and the several motions for mistrial and specifically examining that testimony ordered stricken by the trial court and the instructions to the jury to disregard the same, we do not find that appellant was so prejudiced as to render it impossible for him to have had a fair and impartial trial or that the cumulative effect of the trial court's rulings amounted to reversible error. This court finds, therefore, that the trial court did not abuse its discretion in denying appellant's motion for mistrial and appellant's seventh assignment of error is found not well-taken.

In his eighth assignment of error appellant asserts that the trial court erred in instructing the jury as to the definition of force requested by appellee and in failing to instruct the jury on the lesser included offense of gross sexual imposition.

In support of his first assertion concerning the instruction on force, appellant argues that the instruction given as taken from *State* v. *Eskridge* (1988), 38 Ohio St. 3d 56, is not applicable herein and should not have been given.

Crim. R. 30(A) provides for special instructions requested by the parties:

"(A) Instructions; error; record. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * *"

It is well-established that in criminal cases special jury instructions requested by a party must be included, at least in substance, in the trial court's general charge if they are correct, pertinent and timely presented. *State* v. *Guster* (1981), 66 Ohio St. 2d 266. See, also, *State* v. *Theuring* (1988), 46 Ohio App. 3d 152. Further, a single challenged instruction may not be reviewed in isolation, but must be evaluated within the context of the entire charge. *State* v. *Price* (1979), 60 Ohio St. 2d 136.

In this case appellee requested a special jury instruction as to force and threat of force pursuant to the Supreme Court of Ohio's decision in *State* v. *Eskridge*. The trial court, over appellant's objection, determined it would give the requested charge with two changes. The charge given is as follows:

"Now in addition, the Court wishes to give you this added definition as to force and threat. The force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relationship to each other; as the relationship between a stepfather and a daughter under ten years of age. With the filial obligation of obedience to a stepparent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size, and strength. Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.

"Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose."

The charge given by the trial court was taken in part from the syllabus of the *Eskridge* case and from the body of the opinion. That case involved a father who was charged with the forcible rape of his four-year-old daughter. The *Eskridge* court determined that where one holds a position of authority such as the relationship of father and daughter over a victim, explicit threats or displays of force are not required to prove the forceful element of rape.

Here we have a similar situation with appellant, Sara's stepfather, holding a position of authority over her, and telling her to do something and not to inform anybody about it. When reviewing the challenged instruction within the context of the trial court's entire charge, we find that it did convey a proper statement of the law, was timely presented and was pertinent to this case. We find, therefore, that the trial court did not err in giving the requested instruction.

Appellant also asserts that the trial court erred in failing to charge the jury on the lesser included offense of gross sexual imposition.[2] The trial court determined that the instruction was not required since the element of sexual contact present in that offense was not part of the crime charged herein.

Pursuant to R.C. 2945.74 and Crim. R. 31(C), a defendant is entitled to an instruction on a lesser included offense when the trial court determines that:

"(1) * * * the offense on which the instruction is requested is necessarily lesser than and included within the charged offense, under the statutory elements test announced in *State* v. *Kidder* (1987), 32 Ohio St. 3d 279, 513 N.E. 2d 311; and (2) after examining the facts of the case, ascertains that the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater." (Citations omitted.) *State* v. *Johnson* (1988), 36 Ohio St. 3d 224.

In *Johnson, supra,* the Supreme Court of Ohio held that gross sexual imposition, R.C. 2907.05(A)(3), is a lesser included offense of rape, R.C. 2907.02(A)(3) [now R.C. 2907.02(A)(1)(b)]. The *Johnson* court went on to state, however, that an instruction on a lesser included offense should only be given where the evidence warrants stating:

"Specifically, * * * a charge on the lesser included offense is not required, unless the trier of fact could reasonably reject an affirmative defense and could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense." *Kidder, supra,* at 282.283, 513 N.E. 2d at 315-316."

In *Johnson,* the defendant was charged with forcible rape of his five young daughters. The state chose to prosecute for the sole offense of rape narrowing the focus on two distinct periods of time and its entire case depended upon the credibility of the victims' testimony as to *penetration* within that time period. Although there was general testimony of merely touching or sexual contact, the court determined that this testimony was not connected with the specific action of the penetration. The only defense was that the charged events never occurred. In determining if the evidence would support a charge on gross sexual imposition, the trial court examined the evidence in light of the definitions of sexual conduct, the element required for the crime of rape and sexual contact the element required for gross sexual imposition. The court determined that in view of the defense the jury could not reasonably disbelieve the testimony as to penetration and believe testimony as to mere touching. *Id.* at 227.

Here, as in *Johnson,* the state chose to prosecute solely for the one charge of rape and appellant's defense was that the charged act never occurred. The testimony of the victim fit clearly within the definition of sexual conduct as required by the rape statute, and not that of sexual contact as required by the gross sexual imposition statute. See *State* v. *Workman* (1984), 14 Ohio App. 3d 385. Upon consideration thereof, this court finds that the jury could not, under the evidence presented, reasonably have found appellant not guilty of rape but guilty of gross sexual imposition and, therefore, the trial court did not err by not instructing the jury on the lesser included offense of gross sexual imposition. Accordingly, appellant's eighth assignment of error is found not well-taken.

In his ninth assignment of error appellant asserts that Ohio's mandatory sentence of life imprisonment for forcible rape of a child under thirteen is unconstitutional.

Prior to his sentencing, the trial court held a hearing as to the constitutionality of the penalty provision of R.C. 2907.02(B). At the conclusion of the hearing the trial court found that the penalty provision was constitutional.

In *State* v. *Chaffin* (1972), 30 Ohio St. 2d 13, the Supreme Court of Ohio held at syllabus three:

"A punishment does not violate the constitutional prohibition against cruel unusual punishment if it be not so greatly disproportionate to the offense as to shock the sense of justice of the community."

In determining that a sentence of twenty to forty years proscribed by R.C. 3719.99(F) was not unconstitutional, the *Chaffin* court noted the language in *McDougle* v. *Maxwell* (1964), 1 Ohio St. 2d 68:

"It is generally accepted that punishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community. 24B Corpus Juris Secundum 551, Criminal Law, Section 1978; 15 American Jurisprudence, 171, 172, Criminal Law, Section 523. See definitions of cruel and unusual punishment in Black, Law Dictionary (4 Ed.), and Webster's New International Dictionary (3 Ed.)."

The *McDougle* court also stated that as a general rule a sentence falling within the terms of a valid statute cannot amount to cruel and unusual punishment. *Id.* at 69.

Two other courts of appeals have recently addressed the issue of the constitutionality of the sentence of life imprisonment imposed by R.C. 2907.02(B). In *State* v. *Gladding* (Mar. 2, 1990), Lake App. No. 88-L-13-200, unreported, the Eleventh District Court of Appeals, citing *McDougle* and *Chaffin,* held that "considering the heinousness of the crime of raping a nine year old child, it cannot be said that appellant's sentence was disproportionate or shocking to the moral senses of the community." In *State* v. *Barnes* (Apr. 8, 1985), Clermont App. No. 84-05-041, the Twelfth District Court of Appeals held that a sentence of three consecutive life sentences in addition to four consecutive terms of not less than two nor more than five years of imprisonment for child endangering, while severe, was clearly within the parameters set forth in the Revised Code for sentencing upon conviction of the subject offenses, bore a reasonable relationship to both the penalties set forth in the code and the evidence presented at trial, and did not amount to cruel and unusual punishment.

Given the nature of the crime of forcible rape of a child less than thirteen years old, this court cannot say that the penalty prescribed by R.C. 2907.02(B) is so greatly disproportionate as to shock the sense of justice of the community. We find, therefore, that the trial court did not err in affirming the constitutionality of the penalty imposed by that section. Accordingly, appellant's ninth assignment of error is found not well-taken.

On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and judgment of the Ottawa County Common Pleas Court is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., GLASSER, J., ABOOD, J., concur.

---

[1] "§2945.59. Proof of defendant's motive.

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior of subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

[2] "§2907.05 Gross sexual imposition.

"(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons, to have sexual contact when any of the following apply:

"(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force. "* * *

"(3) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of such person."