DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Sandusky County Court of Common Pleas, which entered judgment on a jury verdict finding appellant guilty of murder. For the reasons that follow, we affirm the judgment of the trial court.
On January 27, 1996, Alfredo Mendez Perez was found murdered outside a trailer located in the back of the El Rancho restaurant in Fremont. Perez, a visitor from Guatemala, had been staying in the trailer for several weeks before his murder. Though the murder remained unsolved for some time, appellant was eventually indicted for the crime on March 10, 2000. The indictment charged appellant with aggravated murder (prior design and calculation) in violation of R.C. 2903.01(A). Appellant was tried before a jury in October 2000, and the jury found him guilty of the lesser included offense of murder. The trial court sentenced appellant to serve a term of incarceration of fifteen years to life, to begin at the end of the prison term appellant was then serving for an unrelated crime. Appellant now appeals, setting forth the following assignments of error:
"ASSIGNMENT OF ERROR I:
 "`THE TRIAL COURT COMMITTED AN ERROR OF LAW BY ADMITTING PRIVILEGED EVIDENCE CONTRARY TO R.C. 2945.42 AND EVID.R. 601.'
"ASSIGNMENT OF ERROR II:
 "`THE DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.'"
In his first assignment of error, appellant contends that the trial court erred in admitting the testimony of Heather Sandoval as that testimony should have been excluded based on Evid.R. 601 and R.C. 2945.42. Heather Sandoval was appellant's wife at the time of the offense, but they were divorced at the time of trial. Evid.R. 601 embodies the rule on competency of witnesses, and R.C. 2945.42 embodies the rule on privileges. State v. Rahman (1986), 23 Ohio St.3d 146, 148-49; State v.Adamson (1995), 72 Ohio St.3d 431, 433.
Turning first to the competency issue, Evid.R. 601 provides, in pertinent part:
"Every person is competent to be a witness except:
"* * *.
 "(B) A spouse testifying against the other spouse charged with a crime except when either of the following applies:
 "(1) A crime against the testifying spouse or a child of either spouse is charged;
"(2) The testifying spouse elects to testify."
As the decision to admit or exclude testimony is within the sound discretion of the trial court, we will only reverse such a decision if the trial court abused its discretion. See State v. Long (1978),53 Ohio St.2d 91, 98; State v. Woodward (July 24, 1998), Lucas App. No. L-97-1239, unreported. The Supreme Court of Ohio has stated that "[t]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157.
Appellant contends that Heather Sandoval was not competent to testify because her testimony was not given voluntarily. At trial, Heather began to testify, but a question arose about her competency. At that point, the trial court, outside the hearing of the jury, explained to Heather that she was not required to testify if she chose not to. The trial court asked Heather if she was electing to testify and she responded that she was. Defense counsel then explained to the court that Heather's interview with the police had been videotaped, and on the tape the interviewing detective told Heather that if she cooperated the prosecutor would not pursue charges against her. Defense counsel questioned whether Heather's consent to testify could be voluntary given such promises. The prosecutor indicated to the trial court that the state did not intend to bring charges against Heather either way, but it is not clear that Heather knew this. The trial court then took Heather off the stand and viewed Heather's taped interview with the police. The court later permitted Heather to testify as to her knowledge of appellant's possible involvement in the murder.
It is generally well-accepted that, once divorced, a party is competent to testify against a former spouse. See State v. Feuerwerker (Nov. 20, 1986), Cuyahoga App. No. 51343, unreported; State v. Jackson (July 20, 1989), Cuyahoga App. No. 55550, unreported, appeal dismissed (1989),47 Ohio St.3d 702; State v. Fewerwerker [sic] (1985), 24 Ohio App.3d 27,31. See, also, Perieira v. United States (1954), 347 U.S. 1, 6; Lockev. State of Ohio (1929), 33 Ohio App. 445, 448-49. In fact, Evid.R. 601(B), on its face, applies only to "spouses." In this case, Heather Sandoval was divorced from appellant at the time of trial. Therefore, she was competent to testify against him.
The next question is whether Heather Sandoval's testimony is subject to the marital privilege embodied in R.C. 2945.42. That section provides, in pertinent part:
 "Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness, or in case of personal injury by either the husband or wife to the other, or rape or the former offense of felonious sexual penetration in a case in which the offense can be committed against a spouse, or bigamy, or failure to provide for, or neglect or cruelty of either to their children under eighteen years of age or their physically or mentally handicapped child under twenty-one years of age, violation of a protection order or consent agreement, or neglect or abandonment of a spouse under a provision of those sections. The presence or whereabouts of the husband or wife is not an act under this section. The rule is the same if the marital relation has ceased to exist."
Again, we review the trial court's determination on evidentiary issues by applying an abuse of discretion standard of review. See State v. Long,53 Ohio St.2d at 98.
The purpose of the marital privilege is to foster marital peace and harmony. See State v. Mowrey (1982), 1 Ohio St.3d 192, 198, certiorari denied (1984), 466 U.S. 940. However, the privilege does not apply to all acts or communications; it applies only to those acts or communications meant by the non-testifying spouse to be confidential. See R.C. 2945.42; State v. VanHoy (June 22, 2000), Henry App. No. 7-2000-01, unreported.
In this case, as indicated earlier, Heather Sandoval agreed to testify. She testified that sometime around Christmas in 1996, in the early evening, after having dinner with appellant's mother, Heather drove appellant in her Ford Festiva to the El Rancho restaurant, which was closed at the time. She drove up to the side of the building, and she could see the trailer from where she parked. She then drove away from the restaurant alone, and parked on the side of a nearby gas station. She testified that the gas station was open at the time and that there were people around. She sat alone in the car for about ten minutes, at which time appellant returned to the car. Upon his return, appellant was holding a "crowbar" and he had "a little bit of blood on his hands." (When shown a picture of a tire iron, Heather confirmed that the item in the picture is what she calls a crowbar.) With appellant in the car, she then drove to the river.
We agree with appellant that Heather should not have been allowed to testify as to driving appellant to either the El Rancho restaurant or the river because they were alone during that time and one can infer that appellant intended those acts and communications to be confidential. SeeVanHoy, supra. As to parking at the gas station, though Heather testified that the gas station was open and there were people around, there is no evidence that these people were anywhere near the side of the building where Heather parked, that these people were around when appellant returned to their car, or that the presence of these people was "known" to appellant. See R.C. 2945.42 (privilege does not apply where act or communication done in the "known presence" of a third party competent to testify). See, also, State v. Carpenter (1992),83 Ohio App.3d 842, 845 (trial court committed reversible error when it admitted wife's testimony where there was no showing that husband was aware of the presence of third persons). Further, Heather testified that it was dark at the time. Based on all of these facts, we cannot say that appellant did not intend for his acts to be confidential. See, e.g.,Rahman, 23 Ohio St.3d at 149; VanHoy, supra. We therefore find that the trial court erred in admitting the testimony of Heather Sandoval.
Next, we must determine whether this error is harmless. See, Rahman,23 Ohio St.3d at 150. The Supreme Court of Ohio has held that error is harmless if "there is no reasonable possibility that the evidence may have contributed to the accused's conviction." State v. Bayless (1976),48 Ohio St.2d 73, paragraph seven of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911. The Supreme Court of Ohio has also stated that it is appropriate to find error harmless where there is "either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction." State v. Ferguson (1983),5 Ohio St.3d 160, 166, fn 5. See, also, Crim.R. 52(A) (harmless error defined as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights * * *.") To find harmless error, a reviewing court must be able to "declare a belief that the error was harmless beyond a reasonable doubt." Bayless, 48 Ohio St.2d 73, at paragraph seven of the syllabus. The Supreme Court of Ohio, cautioning against cavalier application of the doctrine, noted that it is not the role of the reviewing court to sit as a trier of fact or to speculate on the outcome of the trial if the case were to be re-tried without the inadmissible testimony. Rahman, 23 Ohio St.3d at 151, fn 4. Instead, it is the job of the reviewing court to "assess the impact" of the inadmissible testimony on the jury. Id.
Courts have found error not to be harmless where the evidence, after excluding the inadmissible testimony, is conflicting and requires the jury to judge witness credibility, see, e.g., State v. Deyling (Jan. 28, 1998), Medina App. No. C.A. 2672-M, unreported, or where the only remaining evidence is circumstantial, see, e.g., Rahman,23 Ohio St.3d at 150. However, courts have not hesitated to find that error is harmless where the excluded evidence is merely cumulative to other compelling evidence, see, e.g., State v. Fenton (1990), 68 Ohio App.3d 412, 428, appeal dismissed (1990), 56 Ohio St.3d 702, or where other evidence overwhelmingly proves the defendant's guilt, see, e.g., Bayless,48 Ohio St.2d at 107.
In this case, there was overwhelming evidence of appellant's guilt even absent Heather Sandoval's testimony. For example, Michael Earl testified that appellant admitted to him in August 1997 that he (appellant) committed the murder outside of the El Rancho restaurant. According to Earl's testimony, appellant told him that he heard that the man living in the trailer behind El Rancho restaurant had several thousand dollars, and he (appellant) wanted to rob him of it. Appellant stated that he and his wife drove to El Rancho where he coaxed the resident out of the trailer, beat him, and then looked for money inside the trailer. Finding none, he became angry and beat the man more until he was dead. Earl testified that appellant explained that he beat his victim with a tire iron, ran to a nearby gas station, and threw the tire iron across the railroad tracks. Earl testified that appellant, in September 1998, again discussed the murder. He relayed to Earl the same facts that he did in 1997, except that this time he told Earl that he threw the tire iron in the river. On this occasion, appellant also told Earl what he did with his clothes after the murder: he put them in a bag and threw them in a dumpster.
Earl also testified about how he eventually spoke with the police about his knowledge of the murder and how the police wired him and asked him to speak with appellant and try to get his confession on tape. According to Earl, at the end of December 1999 or the first part of January 2000, he went to visit appellant, and appellant, unknowingly on tape, again discussed the death of the man at the El Rancho restaurant, but appellant did not give the sort of detail he had in previous conversations with Earl. During this taped conversation, appellant stated that he thought the victim was from Ecuador, and Earl believed that appellant also discussed bloody clothes.
The tape of this conversation (which was enhanced by the police) was not admitted into evidence. However, Detective Sean O'Connell from the Fremont Police Department testified as to the contents of the tape. According to O'Connell, appellant stated on the tape that he "had blood on his hands," that he "kicked the victim," that the victim was from Ecuador, that the victim "lived in a small trailer," that the victim looked at him "as though he knew something was about to happen," that "everything seemed to go dark around him," that he (appellant) "later cried," and that only Earl and Heather could "do him."
Other evidence against appellant came in the form of testimony from Lynn Bolin, a forensic scientist from the Bureau of Criminal Investigation ("BCI"). According to Bolin, DNA from a sample of blood taken from a key removed from the victim's door matched a sample of appellant's DNA. This being true, appellant could not be excluded as the donor of the blood on the key. However, Bolin also testified that the "match" only means that appellant is a possible source of the DNA. According to Bolin's calculation, 1 in 76 in the Caucasian population and 1 in 83 in the Hispanic population could have also "matched."
The defense attempted to raise a reasonable doubt in the minds of the jurors by eliciting from various witnesses certain inconsistencies or gaps in the evidence. For example, the defense pointed out that although Earl testified that appellant told him that the murder took place sometime between late on Christmas Eve and early Christmas morning, one witness testified that he saw the decedent alive at midnight mass on Christmas Eve and on the day after Christmas. The defense also elicited testimony from Earl that appellant left out some of the details about the murder when he recounted the story and that some of the details that appellant recounted were public knowledge based on newspaper accounts.
Based on the record, we find it was harmless error to admit Heather Sandoval's testimony. First, Heather's testimony was cumulative to testimony given by Earl. See Fenton, 68 Ohio App.3d at 428. Second, we find that the other record evidence overwhelmingly supports appellant's guilt. See Bayless, 48 Ohio St.2d at 107. We therefore find appellant's first assignment of error not well-taken.
In his second assignment of error, appellant contends that trial counsel was ineffective. The Supreme Court of Ohio has held that courts should apply a two-part test to determine ineffective assistance claims. According to the Supreme Court of Ohio:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, at paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011, citing State v. Lytle (1976), 48 Ohio St.2d 391; Strickland v. Washington (1984), 466 U.S. 668.
The court must defer to the strong presumption that counsel's performance falls within the wide range of reasonable professional performance.Bradley, 42 Ohio St.3d at 142. Even if counsel's performance falls outside the objective standard of reasonable representation, the court shall not reverse unless counsel's ineffectiveness resulted in prejudice. Id. In order to show prejudice warranting reversal, the defendant must show that there is a reasonable probability that, but for counsel's ineffectiveness, the outcome of the proceeding would have been different. Id., quoting Strickland, 466 U.S. at 694.
The Court in Bradley derived guidance from the Strickland decision on how to proceed with the two-part analysis for ineffective assistance claims. In Strickland, the United States Supreme Court stated:
 "Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697, quoted in Bradley, 42 Ohio St.3d at 143.
Appellant contends that counsel was ineffective in the following ways: (1) in failing to object to testimony about a Ford Festiva; (2) in failing to inquire as to the bias or motive of Heather Sandoval and Michael Earl; (3) in failing to include in the trial record the taped interview Heather Sandoval gave to police on April 23, 1999; and (4) in failing to request further DNA testing.
First, appellant contends that trial counsel was ineffective in failing to object to Jamie Chamberlain's testimony about a Ford Festiva. Chamberlain testified that he purchased a 1990 blue Ford Festiva for his girlfriend. Heather Sandoval once owned a blue 1990 Ford Festiva, and she testified from looking at a picture of Chamberlain's Festiva that it looked similar to the one she previously owned. Chamberlain testified that the car was missing its tire iron. Later, Detective O'Connell testified that he could never definitively trace Chamberlain's Festiva as the one once owned by appellant and Heather Sandoval. We fail to see how the admission of this evidence prejudiced appellant since it was probative of nothing.
Second, appellant contends that trial counsel was ineffective in failing to inquire into Heather Sandoval's or Michael Earl's bias or motive for testifying against appellant. First, as to Heather, we have already determined that, even absent her testimony, the evidence overwhelmingly supported appellant's guilt. Therefore, any failure on the part of trial counsel to inquire into Heather's bias or motive could not have prejudiced appellant. Even so, trial counsel did inquire into Heather's concern with having her children taken away and the fact that the police indicated that she might be charged with a crime. Therefore, we find that trial counsel was not ineffective as he did, in fact, inquire into Heather's bias or motive.
As to Michael Earl, defense counsel did inquire into the possibility of a reward, and Earl denied being motivated by a reward. Appellant also contends that trial counsel should have inquired into whether Earl was threatened with charges for having failed to report a felony. Even if this is true, given the state of the record, we cannot say that this one omission prejudiced appellant. Finally, appellant contends that trial counsel was ineffective in failing to establish that appellant thought of Earl as a spiritual advisor. Since the trial court previously ruled that the clergy-penitent privilege did not apply, failure to inquire about this matter could not have prejudiced appellant.
Third, appellant contends that trial counsel was ineffective in failing to make part of the trial record Heather Sandoval's taped interview with the police. Given our holding that the record contains overwhelming evidence of appellant's guilt even absent Heather's testimony, counsel's failure to have this tape admitted could not have prejudiced appellant. In addition, in his brief, appellant relies on this tape mostly to show that Heather was not competent to testify against appellant because her testimony was not voluntary. However, we have already held that Heather was competent because she was not married to appellant at the time of trial. Appellant also relies on the tape to show that the police told Heather that she might be prosecuted. Heather admitted this. Therefore, the failure to make this tape a part of the record could not have prejudiced appellant.
According to appellant, trial counsel was also ineffective in not making a good record for appellate review by failing to vigorously cross-examine Detective O'Connell about any threats or promises to Heather or Earl. Again, Heather admitted that the police discussed possibly prosecuting her and that she was concerned about her children. Also, Earl was questioned about the possibility of a reward. Therefore, any omission in failing to question O'Connell about these matters did not prejudice appellant.
Finally, appellant contends that trial counsel was ineffective in failing to request further DNA testing. According to appellant, counsel should have requested that the samples be preserved for independent testing. However, given the results of the BCI's testing, which pointed toward appellant's guilt but did not firmly establish it, it would have been reasonable trial strategy not to request further testing and hope that the BCI tests created a reasonable doubt in the minds of the jurors. For all of these reasons, we find appellant's second assignment of error not well-taken.
On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Sandusky County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., Richard W. Knepper, J., and Mark L. Pietrykowski,P.J. concur.