THE STATE OF OHIO, APPELLANT, *v.* JOHNSON, APPELLEE.

[Cite as State *v.* Johnson (1988), 36 Ohio St. 3d 224.]

(No. 87-381—Decided May 11, 1988.)

*George E. Pattison,* prosecuting attorney, *Lawrence R. Fisse* and *Daniel Breyer,* for appellant.

*R. Daniel Hannon* and *Gregory Chapman,* for appellee.

HOLMES, J. The sole issue before us is whether the evidence presented in the case *sub judice* would have reasonably supported a conviction for the offense of gross sexual imposition, R.C. 2907.05(A)(3),[1] as a lesser included offense of rape, former R.C. 2907.02(A)(3),[2] thus requiring a charge to the jury on such offense. For the reasons which follow, we answer such query in the negative and reverse the judgment of the court of appeals.

The terms "sexual conduct" and "sexual contact" are defined in R.C. 2907.01, as follows:

"As used in sections 2907.01 to 2907.37 of the Revised Code:

"(A) 'Sexual conduct' means vaginal intercourse between a male and a female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

"(B) 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

Pursuant to R.C. 2945.74 and Crim. R. 31(C), a criminal defendant is entitled to an instruction on a lesser included offense whenever the trial court: (1) determines that the offense on which the instruction is requested is necessarily lesser than and included within the charged offense, under the statutory elements test announced in *State* v. *Kidder* (1987), 32 Ohio St. 3d 279, 513 N.E. 2d 311; and (2) after examining the facts of the case, ascertains that the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater. *Id.* at 280, 513 N.E. 2d at 314; *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, 18 O.O. 3d 528, 415 N.E. 2d 303; *State* v. *Loudermill* (1965), 2 Ohio St. 2d 79, 31 O.O. 2d 60, 206 N.E. 2d 198. Where the defendant is thus entitled to the instruction, the refusal of the court to charge upon the lesser in-

---

[1] R.C. 2907.05(A) and (B) provide in part:

"(A) No person shall have *sexual contact* with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons, to have sexual contact when any of the following apply:

"* * *

"(3) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of such person.

"(B) Whoever violates this section is guilty of gross sexual imposition. Violation of division (A)(1) or (2) of this section is a felony of the fourth degree. Violation of division (A)(3) of this section is a felony of the third degree." (Emphasis added.)

[2] R.C. 2907.02(A)(3) [now 2907.02 (A)(1)(b)] and (B) provided:

"(A) No person shall engage in *sexual conduct* with another, not the spouse of the offender, when any of the following apply:

"* * *

"(3) The other person is less than thirteen years of age, whether or not the offender knows the age of such person.

"(B) Whoever violates this section is guilty of rape, an aggravated felony of the first degree. If the offender under division (A)(3) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(3) of this section shall be imprisoned for life." (Emphasis added.)

cluded offense constitutes prejudicial error. *Loudermill, supra,* at syllabus; *Kidder, supra,* at 281, 513 N.E. 2d at 314.

The lower courts determined that gross sexual imposition, as statutorily defined, is indeed a lesser included offense of rape, as that crime is statutorily defined. The parties do not contest this holding, and we agree with it, as the three-part statutory elements test set forth in *Kidder, supra,* paragraph one of the syllabus, is fulfilled. Gross sexual imposition, R.C. 2907.05 (A)(3), is a lesser included offense of rape, R.C. 2907.02(A)(3).

However, an instruction on a lesser included offense should only be given when the evidence warrants it. *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, certiorari denied (1985), 472 U.S. 1032; *State* v. *Thompson* (1987), 33 Ohio St. 3d 1, 12, 514 N.E. 2d 407, 418; *Beck* v. *Alabama* (1980), 447 U.S. 625, 636. Specifically, "* * * a charge on the lesser included offense is not required, unless the trier of fact could reasonably reject an affirmative defense and could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense." *Kidder, supra,* at 282-283, 513 N.E. 2d at 315-316. The record herein reveals that the jury could reasonably reject appellee's complete defense, *i.e.,*

that none of the charged events ever took place. However, under no reasonable view of the evidence could the jury have found against the state on the issue of intercourse or penetration and still have found for the state on the remaining elements of gross sexual imposition, *i.e.,* "sexual contact." The trial court did not err in refusing to give the requested instruction, and in fact would have erred to the prejudice of appellee had it done so.

The state's case was narrowly focused: it chose to prosecute solely for the offenses of rape. The state concentrated on two distinct periods of time: (1) the three-month period prior to November 4, 1984 when the children were living in an apartment shared by their mother and the appellee, and (2) the twelve days spent at their grandmother's house between November 4, 1984 (the day their mother was taken to the hospital where she later died) and November 16, 1984. The state was required to prove four separate rapes during each time period beyond a reasonable doubt.

The state presented testimony of the girls' aunts which corroborated the alleged sexual abuses. In addition, the state presented testimony of a social worker with the Children's Hospital's Child Abuse Team, who had examined the girls in early February 1985 prior to their medical examination, and who testified to the girls' consistent use of the terms "bird" and "peach" to describe the acts performed.[3]

However, the state's entire case

---

[3] The social worker testified as follows:

"Q. Could you tell us what Amberly, the oldest child, told you as far as the history was involved with her?

"MR. PINALES [defense counsel]:·Objection, Your Honor.

"THE COURT: Overruled.

"A. Amberly talked of having what she called a 'bird' placed in her private area, at which point she pointed to the vaginal area herself. She also talked about the 'bird' being placed in her mouth and she described it as 'peeing in my mouth.' The bird was identified as a penis.

"Q. Did you also talk with the younger girl, Holly, at that time?

depended on the credibility which the jury attached to the girls' testimony as to penetration. Since the medical examination was not conducted until long after the events allegedly took place, the act of oral penetration could not be corroborated at all by physical evidence and vaginal penetration only partially so.[4] Contrary to the court of appeals' view of the record, the transcript reveals that the state elicited testimony of at least four acts of penetration from each of the victims, twice each while at the apartment and twice each during their stay at their grandmother's home. The girls stated that, on a total of at least eight occasions, appellee placed his "bird" either *in* their "peach" or *in* their mouth.

In addition to such specific testimony, the girls testified that appellee *also* placed his "bird" on their back, butt and leg, at various times. However, this testimony did not connect such contact with any of the specific acts of penetration testified to by the girls. Appellee's defense was a complete one: he attempted to show that the girls' stories were wholly fabricated. At no time did he challenge their ability to differentiate between mere touching and actual penetration of a body cavity. In view of such defense, the jury could not consistently or reasonably disbelieve the girls' testimony as to penetration and, at the same time, consistently and reasonably believe their testimony on the contrary theory of mere touchings specifically related to any of the charged events.

---

"A. Yes.

"Q. And what did she indicate to you as her history?

"MR. PINALES: Objection, Judge, can the record reflect a continuing objection?

"THE COURT: Certainly. Overruled. Go ahead.

"A. Holly was less verbal than Amberly, she was a little bit younger, as I recall. She talked about the penis being placed in her private part. Also which she referred to as a 'peach.' She pointed to the area. I usually ask the children to identify whichever word they are using and upon the indication of a peach, I asked her to show me where that was, and she also pointed to the vaginal area.

"Q. Is this the first time that you had met these children?

"A. Yes.

"Q. Are children when they meet you apt to be somewhat shy at times?

"A. Yes.

"Q. And in this particular case, did you have—did you put any words in the children's mouth, or talk to them at all in that fashion?

"A. No.

"Q. Did anybody else that was present interrupt, or put words in their mouth?

"A. No, they did not. In fact, if that occurs when the family is in the room when I'm interviewing the children, if they do object and put words, or make comments, then I usually separate the children from the family. In this case, they did not say anything until after I had talked with the children. And then I asked them to help me identify some of the words that the children were using.

"Q. Just to double check bird and peach?

"A. Right."

[4] The examining physician testified that both girls lacked a hymen and the hymenal ring which normally covers the vaginal opening was lax and widely opened. He further testified that such condition was consistent with something having penetrated the opening:

"Q. Would your finding of the lack of hymenal tissue, a complete lack of hymenal tissue be consistent with repeated penetration by a penis?

"A. It would be consistent, yes.

"Q. Would it be likely that there would be a complete absence of hymenal tissue with just one single incident of penetration with a penis?

"A. Most unlikely."

Appellee was thus not entitled to an instruction on gross sexual imposition as a lesser included offense of rape.

Appellee was entitled to the unqualified right to have the prosecution prove every element of the offense of rape beyond a reasonable doubt, and if the state was unable to do so, he was entitled to an acquittal. *State* v. *Kilby* (1977), 50 Ohio St. 2d 21, 24, 4 O.O. 3d 80, 81, 361 N.E. 2d 1336, 1338. Where, as here, the evidence does not support a conviction on a lesser included offense, it would be erroneous to instruct the jury thereon, as to do so would confront the jury with the choice of reaching an unreasonable conclusion. *Kilby, supra,* at 25, 4 O.O. 3d at 82, 361 N.E. 2d at 1338. If appellee was not guilty of rape, his " 'liberty should not be dickered away by a compromised verdict upon another crime.' " *Kilby, supra,* at 24, 4 O.O. 3d at 82, 361 N.E. 2d at 1338, quoting *Loudermill, supra,* at 81, 31 O.O. 2d at 61, 206 N.E. 2d at 200. In addition, "[t]o allow a jury to speculate on lesser-included offenses departs from the traditional rule in Ohio that punishment is not the province of the jury but solely the responsibility of the judge." *Kilby, supra,* at 24, 4 O.O. 3d at 82, 361 N.E. 2d at 1338.

We are certainly aware of the countervailing consideration that "* * * *if evidence tending to prove a lesser included offense is present* and a jury is inhibited by the charge from finding defendant guilty thereof, the collective conscience of that body may too easily be disposed to fabricate the elements of the crime charged in the indictment and to find defendant guilty as charged rather than risk, by a ver-

dict of acquittal, turning the malefactor loose upon a society grievously harmed by his act. This * * * [would be] speculation at its worst and a natural and probable consequence of a failure to charge on a lesser included offense *when evidence of its commission is present.*" (Emphasis added.) *Loudermill, supra,* at 81, 31 O.O. 2d at 61, 206 N.E. 2d at 200. See, also, *Beck* v. *Alabama, supra; Keeble* v. *United States* (1973), 412 U.S. 205. In this case, however, the evidence tends, at most, to prove that one or more incidents of gross sexual imposition may have occurred *in addition to* the charged rapes. Nothing in the record reasonably proves that such incidents were included within the charged events. If the evidence was deficient in proving one or more of the penetrations, the jury should not have been permitted to compromise an acquittal in favor of conviction of a lesser offense. The jury's only reasonable choice was between a conviction of each separate rape or an acquittal thereon.

Therefore, we hold that the trial court properly refused to instruct the jury on the lesser included offense of gross sexual imposition, and accordingly reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., LOCHER and DOUGLAS, JJ., concur.

H. BROWN, J., concurs in judgment only.

SWEENEY and WRIGHT, JJ., dissent.