OPINION
{¶ 1} Appellant, Deavery Q. Lyons, appeals the judgment entered by the Trumbull County Court of Common Pleas. Lyons was convicted of one count of rape, with a firearm specification, and one count of kidnapping. He received a life sentence because of the force element and the fact the victim was under thirteen years old.
 {¶ 2} The female victim in this matter was twelve years old at the time of the incident. She lived in the same neighborhood as Lyons' grandmother. Lyons would periodically visit his grandmother. The victim knew Lyons, because she would walk his dogs.
 {¶ 3} On the day in question, the victim was walking with two male friends. The victim suggested they stop and ask Lyons if they could walk his dogs. The boys remained near the street, while the victim went to the door to ask about walking the dogs.
 {¶ 4} According to the victim, Lyons asked her to step inside of the house, where he asked to kiss her, and she told him no. Following the kiss, Lyons put a gun to the victim's head and told her he would kill her if she told anyone about what he did. Thereafter, Lyons inserted his finger into the victim's vagina and, then, inserted his tongue into her vagina. Finally, he unzipped his pants and engaged in sexual intercourse with the victim. The victim told Lyons she had to get home to babysit, and he let her leave.
 {¶ 5} The victim told one of the boys what had happened. The boy told the victim's mother about the incident. The mother contacted the police. In addition, she went to ask Lyons about the incident. Lyons was in a car with his friend, Sean Bush. The mother asked Lyons to come to her house to discuss the incident. Initially, Lyons was interested; however, when the mother told him the police would be there, he changed his mind. While the mother was talking to Lyons, she noticed he was holding a white plastic bag. As the mother was pulling away, she watched Lyons get out of the car and run behind some houses.
 {¶ 6} Melissa Putnam and Christin Gulliford witnessed the encounter between Lyons and the victim's mother. After the encounter ended, they watched Lyons and Bush get out of the car and run behind the houses. Putnam testified that Lyons put a gun into a Save-A-Lot bag as he got out of the car. Gulliford did not see a gun, but observed Lyons carrying a plastic bag. Putnam and Gulliford were still present when the police arrived, and they informed the police the direction in which Lyons and Bush ran and suggested that they were in one of two houses.
 {¶ 7} Lyons and Bush went to Tanya Warfield's house. Warfield was a friend of Bush and Lyons. According to Bush, who testified for the defense, he and Lyons went to her house on prior occasions to take drugs. Warfield testified that Lyons appeared nervous and was closing the blinds. She observed police cars outside her residence. Thereafter, she told Lyons and Bush to leave her house because she did not want to be involved in whatever the situation was.
 {¶ 8} Lyons and Bush left the house, and Lyons was arrested. Warfield gave a white plastic bag to the police. The bag was left on a dog food container in her house, and Warfield stated that Lyons entered her house with the bag. Inside the bag, the police found a loaded handgun and crack cocaine.
 {¶ 9} Lyons was taken to the Warren police station. He was interviewed by Lieutenant Joseph Marhulik and Detective Sergeant John Delbene. Prior to the interview, he was read his Miranda warnings.[1] He was initially questioned about the events. Thereafter, he signed a Miranda rights waiver form. Then, he participated in an interview in which Detective Delbene typed out the questions and answers. At the conclusion of the interview, Lyons signed a printed copy of the questions and answers. The entire process was videotaped. In his statement, Lyons admitted to performing oral sex on the victim. He denied having intercourse with her or using a gun during the incident.
 {¶ 10} In October 2002, Lyons was charged with one count of rape, in violation of R.C. 2907.02(A)(1) and (2) and (B), with a firearm specification, and one count of kidnapping, in violation of R.C.2905.01(A)(2) and (C). A bill of particulars was filed indicating the sexual conduct in the rape count concerned oral, digital, and penile penetration. In September 2003, a superseding indictment was issued. This indictment charged Lyons with two counts of rape, both in violation of 2907.02(A)(1) and (2) and (B), with firearm specifications; one count of kidnapping in violation of R.C. 2905.01(A)(2) and (C), with a firearm specification; possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(c), with a firearm specification; and one count of receiving stolen property, in violation of R.C. 2913.51(A) and (C). A new bill of particulars was not filed in relation to the superseding indictment. Lyons pled not guilty to the charges against him.
 {¶ 11} Lyons filed a motion to suppress the statement he gave to police. A suppression hearing was held. At the hearing, Detective Delbene and Lieutenant Marhulik testified for the state about the custodial interrogation. In addition, the state introduced a copy of the Miranda
rights waiver form and the videotape of the interview. Lyons did not testify or introduce evidence at this hearing. After reviewing the evidence presented, the trial court denied Lyons' motion to suppress.
 {¶ 12} Lyons filed a motion to dismiss the superseding indictment. The morning of trial, the trial court held a hearing on Lyons' motion. The trial court dismissed Count 2 of the superseding indictment, which was rape in violation of 2907.02(A)(1) and (2) and (B), with a firearm specification; the firearm specification attached to Count 3 of the superseding indictment, which was the kidnapping charge; and Count 5 of the superseding indictment, which was receiving stolen property, in violation of R.C. 2913.51(A) and (C). The trial court renumbered the superseding indictment so that count one was rape, with a firearm specification; count two was kidnapping, and count three was possession of cocaine, with a firearm specification.
 {¶ 13} Thereafter, a jury trial was held. The jury found Lyons guilty of rape, with a firearm specification, and of kidnapping, also with a firearm specification. The jury found Lyons not guilty of the possession of cocaine charge and the accompanying firearm specification.
 {¶ 14} Pursuant to R.C. 2907.02(B), Lyons was sentenced to life in prison on the rape conviction, to be served subsequent and consecutive to a three-year prison term for the firearm specification. For the purposes of sentencing, the trial court merged the kidnapping conviction into the rape conviction.
 {¶ 15} Lyons raises three assignments of error. His first assignment of error is:
 {¶ 16} "The trial court erred in denying appellant's motion to suppress his confession."
 {¶ 17} Lyons contends the trial court erred by denying his motion to suppress. He argues the motion should have been granted because the statement he made to police was not given voluntarily, due to the officers' use of deceit to obtain his statement.
 {¶ 18} "Appellate review of a motion to suppress presents a mixed question of law and fact."[2] The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence.[3] Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard.[4]
 {¶ 19} "A court, in determining whether a pretrial statement is involuntary, `should consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'"[5]
 {¶ 20} The officers went over the Miranda rights waiver form line-by-line with Lyons. After some initial discussions, Lyons again read the Miranda rights waiver form. Then, he signed the form in the presence of the officers. On appeal, Lyons acknowledges that a valid Miranda
waiver was executed and does not claim that his Miranda rights were violated.
 {¶ 21} At the suppression hearing, both Detective Delbene and Lieutenant Marhulik testified that no threats or promises were given to Lyons. In addition, their cumulative testimony indicates Lyons was not deprived of food, water, or the use of a restroom. Lyons did not present any contradictory evidence regarding these factors. The videotape of the interview was admitted as an exhibit at the suppression hearing. The videotape supports the officers' testimony that the atmosphere of the interview was not intimidating. The videotape also shows that Lyons was offered cigarettes and smoked several during the interview.
 {¶ 22} Detective Delbene told Lyons he had some doubts about what the victim had stated. Lyons has not shown that Detective Delbene was lying when he made this statement. At the suppression hearing, Detective Delbene acknowledged making the statement, but could not remember the basis for the statement. Even if the statement was false, it did not invalidate Lyons' confession. This statement was given following Lyons' response to some of the questions. Detective Delbene asked Lyons some fact-specific questions, apparently based upon what the victim had told the detective. Lyons did not agree with the assertions implied by the questions. Detective Delbene replied that he had some doubts as to the victim's story. The officer clearly stated he was interviewing Lyons in an attempt to get both sides of the story.
 {¶ 23} Lyons also objects to Detective Delbene's assertion to Lyons that ninety-nine out of one hundred times pubic hairs are transferred during sexual intercourse. At the suppression hearing, Detective Delbene admitted making this statement to Lyons. At trial, Detective Delbene admitted that he fabricated this statistic. However, at the suppression hearing, there was no evidence before the trial court that the statistic was false. Moreover, the nature of the statement was not so deceitful as to render Lyons' statement involuntary. The Supreme Court of Ohio has noted that "deception is `a factor bearing on voluntariness. * * *'[6]
However, this factor, standing alone, is not dispositive of the issue."[7] Essentially, the detective told Lyons, if you had sex with her, we will find out. Such a statement is within the realm of legitimate interrogation.
 {¶ 24} The videotape depicts the interview was generally conducted in a very professional, nonintimidating matter. Lyons was told on several occasions that the interview would terminate if he did not wish to proceed. Lyons was not deprived of food, water, restroom use, or even cigarettes. Thus, based on the totality of the circumstances, the actions of the interviewing officers were well within an acceptable level of police interrogation. Their conduct did not compromise the voluntariness of Lyons' statement. Accordingly, we cannot say the trial court erred in denying Lyons' motion to suppress.
 {¶ 25} Lyons' first assignment of error is without merit.
 {¶ 26} Lyons' second assignment of error is:
 {¶ 27} "The trial court erred in denying appellant's request for a jury instruction that included the lesser included offense of gross sexual imposition."
 {¶ 28} Lyons requested a jury instruction on gross sexual imposition. The trial court denied this request, finding that the evidence presented at trial only supported a finding of rape. The trial court's analysis was limited solely to the issue of rape by cunnilingus.
 {¶ 29} Gross sexual imposition is a lesser included offense of rape.[8] "An instruction on a lesser included offense is only `required where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.'"[9]
In addition, the Supreme Court of Ohio has held:
 {¶ 30} "A criminal defendant is not entitled to a jury instruction on gross sexual imposition as a lesser included offense of rape where the defendant has denied participation in the alleged offense, and the jury, considering such defense, could not reasonably disbelieve the victim's testimony as to `sexual conduct,' R.C. 2907.01(A), and, at the same time, consistently and reasonably believe her testimony on the contrary theory of mere `sexual contact,' R.C. 2907.01(B)."[10]
 {¶ 31} Rape requires sexual conduct.[11] Gross sexual imposition requires sexual contact.[12] Therefore, a review of the definitions of those terms is helpful in our analysis of this issue.
 {¶ 32} "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."[13]
 {¶ 33} "`Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."[14]
 {¶ 34} The morning of trial, there was discussion between the trial court and the attorneys on Lyons' motion to dismiss certain counts of the superseding indictment. The bill of particulars filed for the original indictment alleged the sexual conduct was cunnilingus, penile penetration, and digital penetration. There was not a bill of particulars filed for the superseding indictment. However, the attorneys indicated count one was rape by means of cunnilingus, while count two was rape by means of penile/digital penetration. There was discussion as to what the effect of the trial court's dismissal of Count 2 of the superseding indictment would be. The trial court suggested the initial bill of particulars would apply to Count 1 of the superseding indictment. Presumably, this was the approach taken, as the state presented evidence of all three instances of sexual conduct and the jury was instructed on cunnilingus and vaginal intercourse. Therefore, we will address Lyons' argument in relation to all three types of sexual conduct.
 {¶ 35} The Supreme Court of Ohio has held the following regarding an instruction on gross sexual imposition when the basis for the rape charge is cunnilingus:
 {¶ 36} "Even assuming that the jury might reasonably conclude that there was no penetration, [appellant] was not entitled to an instruction on the lesser included offense of gross sexual imposition. Penetration is not required to commit cunnilingus. Rather, the act of cunnilingus is completed by placing one's mouth on the female's genitals."[15]
 {¶ 37} "Cunnilingus" is specifically mentioned in the definition of sexual conduct.[16] Therefore, an act of cunnilingus, standing alone, is sufficient to meet the sexual conduct requirement of R.C. 2907.02.[17]
The state does not need to demonstrate there was penetration of the tongue into the vagina under the "catchall" provision of the sexual conduct definition, which prohibits the insertion of any instrument or body part into another's vagina. Presumably, this rationale was the basis for the Supreme Court of Ohio's holding in State v. Lynch.[18]
 {¶ 38} In his statement to the police, which was admitted during the trial, Lyons admitted to "kissing her little thing." When viewed in context with the rest of the interview, it is apparent Lyons was referring to the victim's genital area. The evidence presented from the victim and Lyons' statement, at a minimum, establishes that he placed his mouth on the victim's genital area. At that point, the act was cunnilingus, and Lyons was not entitled to a jury instruction on the lesser included offense of gross sexual imposition.[19]
 {¶ 39} Lyons denied having sexual intercourse with the victim. At trial, the victim testified that Lyons inserted his penis into her vagina. Likewise, she testified that Lyons inserted his finger into her vagina. Lyons argues the fact that the victim made prior inconsistent statements about whether he penetrated her warranted an instruction for gross sexual imposition. We disagree. At trial, the victim testified that Lyons penetrated her vagina with his penis and finger. Defense counsel attempted to impeach her by using her prior statements that she was not sure if Lyons put his penis inside her. However, there was no evidence presented regarding sexual contact. Pursuant to State v. Johnson, Lyons was not entitled to a jury instruction on gross sexual imposition, since the victim's testimony clearly described sexual conduct.[20]
 {¶ 40} Lyons' second assignment of error is without merit.
 {¶ 41} Lyons' third assignment of error is:
 {¶ 42} "The appellant's convictions are against the manifest weight of the evidence."
 {¶ 43} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 44} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"[21]
 {¶ 45} We note the weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide.[22]
 {¶ 46} Lyons argues that the jury lost its way by convicting him of rape with a firearm specification, but acquitting him of possession of cocaine with a firearm specification. He argues that the gun and the cocaine were found in the same plastic bag.
 {¶ 47} The victim testified that Lyons used a gun during the rape. In addition, she identified the state's exhibit eleven as the gun Lyons had during the rape.
 {¶ 48} The jury could have found that the gun and cocaine belonged to someone else, possibly Bush. Bush was with Lyons when they were at Warfield's residence. Thus, there could have been doubt as to who left the gun in Warfield's residence. No latent finger prints were found on the plastic bag. The gun was not submitted to testing at the Ohio Bureau of Criminal Identification and Investigation ("BCI"), presumably because the officers handled the gun to secure it. If the jury concluded Lyons used Bush's gun during the rape, a verdict of guilty on the rape charge with a firearm specification would not be inconsistent with a not guilty verdict on the possession of cocaine charge.
 {¶ 49} Lyons claims his conviction for rape by means of cunnilingus was against the manifest weight of the evidence, because no saliva was detected on the victim's genitalia. We disagree. Lyons admitted kissing the victim on her vagina. In addition, the victim testified this act occurred. Given that both participants admitted the act occurred, the lack of physical evidence does not prevent a guilty verdict.
 {¶ 50} In his appellate brief, Lyons makes additional assertions regarding the lack of evidence. First, he argues that some semen would have been found if there was vaginal intercourse, even without ejaculation. This assertion is directly contrary to the evidence presented at trial. Brenda Gerardi, from BCI, testified that she would not expect to find semen if there is no ejaculation.
 {¶ 51} Lyons also argues that "if a young girl that has had no prior sexual activity experiences a violent attack, such as the one the alleged victim claimed, there certainly would be some evidence of trauma." Again, the evidence presented at trial disputes Lyons' appellate argument. Dr. Robert Gershkowitz testified that the lack of physical trauma does not mean the victim was not raped. Further, he testified that the majority of rape victims do not show physical trauma. Finally, we note that the victim testified she did not physically resist the attack because Lyons had a gun.
 {¶ 52} Lyons also contends that the verdicts were against the manifest weight of the evidence due to the several different stories the victim gave to the police, at preliminary hearings, and, then, at trial. Defense counsel attempted to impeach the victim regarding the discrepancies in her stories. At that point, it was up to the jury, as the trier of fact, to determine whether her trial testimony was credible.
 {¶ 53} At trial, the victim directly testified that Lyons committed all three types of sexual conduct on her, at gunpoint. In his confession, Lyons admitted to being with the victim on the day in question and engaging in oral sex with her. In addition, DNA consistent with his profile was found on the victim's underwear, boxer shorts, and sanitary pad. As such, we cannot say the jury lost its way or created a manifest miscarriage of justice by finding Lyons guilty of rape and kidnapping.
 {¶ 54} Lyons' third assignment of error is without merit.
 {¶ 55} The judgment of the trial court is affirmed.
Ford, P.J., O'Toole, J., concur.
[1] See Miranda v. Arizona (1966), 384 U.S. 436.
[2] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.
[3] Id., citing State v. Fanning (1982), 1 Ohio St.3d 19.
[4] Id., citing State v. McNamara (1997), 124 Ohio App.3d 706.
[5] State v. Mason (1998), 82 Ohio St.3d 144, 154, quoting State v.Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus.
[6] Schmidt v. Hewitt (C.A.3, 1978), 573 F.2d 794, 801.
[7] State v. Wiles (1991), 59 Ohio St.3d 71, 81.
[8] State v. Johnson (1988), 36 Ohio St.3d 224, paragraph one of the syllabus.
[9] State v. Smith, 97 Ohio St.3d 367, 2002-Ohio-6659, at ¶ 21, quoting State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus.
[10] State v. Johnson, 36 Ohio St.3d 224, paragraph two of the syllabus.
[11] R.C. 2907.02(A)(1).
[12] R.C. 2907.05(A).
[13] R.C. 2907.01(A).
[14] R.C. 2907.01(B).
[15] State v. Lynch, 98 Ohio St.3d 514, 2003-Ohio-2284, at ¶ 86, citing State v. Ramirez (1994), 98 Ohio App.3d 388, 393 and State v.Bailey (1992), 78 Ohio App.3d 394, 395.
[16] R.C. 2907.01(A).
[17] See State v. Lynch, supra.
[18] Id.
[19] Id.
[20] State v. Johnson, supra, paragraph two of the syllabus.
[21] (Citations omitted.) State v. Thompkins (1997), 78 Ohio St.3d 380,387.
[22] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.