OPINION
{¶ 1} The defendant-appellant, Sean A. Danylchuk ("Sean"), appeals from the judgment of the Van Wert County Common Pleas Court Juvenile Division finding him guilty of attempted rape.
 {¶ 2} On August 27, 2004, Jeffrey A. Blackmore ("Blackmore"), a detective with the Van Wert Police Department, filed a complaint charging Sean with one count of rape, a violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. The complaint resulted from allegations made by Sean's cousin, K.S., who was five years old at the time of the offense. K.S. lived in his maternal grandmother's home with his grandmother; his parents, Craig and Jaime; and his younger brother. Sean lived approximately one mile away from his paternal grandmother's home with his parents, Scott and Tina Danylchuk; an older sister; and a younger sister. On July 5, 2004, K.S. told Jaime that Sean had sexually assaulted him when they were playing in K.S.'s "clubhouse", a storage space separating K.S.'s bedroom from his parents' bedroom. Essentially, K.S. alleged that Sean had given and received fellatio and engaged in anal intercourse with him. Jaime took K.S. to the Van Wert Police Department, where they spoke with Blackmore. K.S. was also interviewed by a case worker from the Ohio Department of Job and Family Services and examined by Michael Ruhlen, M.D. ("Ruhlen") at the Kids' Clinic in Lima Memorial Hospital.
 {¶ 3} On December 2, 2004, the trial court held an adjudicatory hearing. The court heard testimony from Jaime; Craig; Amy Clay, from the Department of Job and Family Services; Craig Danylchuk; Tina Danylchuk; Scott Danylchuk; and Penny Ramos. The trial court heard K.S.'s testimony after holding a competency hearing and finding K.S. competent to testify. Ruhlen's deposition was received into evidence and reviewed by the court off the record. On December 7, 2004, the trial court filed its judgment entry, finding Sean guilty of attempted rape, a violation of R.C. 2923.02, a felony of the second degree. Sean appeals from this judgment and asserts the following assignments of error:
The Trial Court abused its discretion when it found a five year oldcompetent to testify.
 The Trial Court's finding of delinquency was against the manifestweight of the evidence.
 {¶ 4} In his first assignment of error, Sean argues that K.S. was incompetent to testify because he had been coached by his uncle, Craig Danylchuk ("Uncle Craig"), and he failed to understand the consequences of lying. Witness competency is governed by Evid.R. 601. In determining whether a child under the age of ten years is competent to testify, the trial court must consider "(1) the child's ability to receive accurate impressions of fact or observe acts about which she will testify; (2) the child's ability to recollect those impressions or observations; (3) the child's ability to communicate what was observed; (4) the child's understanding of truth and falsity; and (5) the child's appreciation of her responsibility to be truthful." State v. Frazier (1991),61 Ohio St. 3d 247, 251, 574 N.E.2d 483, certiori denied (1992),503 U.S. 941.
 {¶ 5} Competency determinations are made in the trial court's discretion, and those determinations may not be disturbed on appeal absent an abuse of discretion. Id.; State v. Clark (1994),71 Ohio St. 3d 466, 469-470, 644 N.E.2d 331 (citations omitted). An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St. 2d 151, 157,404 N.E.2d 144. Therefore, the first issue before the Court is whether the trial court abused its discretion in finding K.S. competent to testify.
 {¶ 6} During the adjudicatory hearing, the trial court held a competency hearing to determine if K.S. was competent to testify. At the time of the hearing, K.S. was six years old. The trial court engaged in the following dialogue with K.S.:
Judge: Where are you right now? Right today. Right now where are you?
K.S.: At the Judge's
Judge: And do you know why you are hear [sic]?"
K.S.: Yes.
Judge: Why are you hear [sic]?
K.S.: Cause of Sean.
Judge: And what are you supposed to do today?
K.S.: Talk about it.
Judge: And are you supposed to tell the truth?
K.S.: Yes.
Judge: And what is the truth? When I say tell the truth what do I mean?
K.S.: That means tell the truth. The truth is good and a lie is bad.
. . .
Judge: Bible school. And do they teach you that you are supposed to tell the truth?
K.S.: Yes. Yes.
Judge: And what happens if you don't
K.S.: I haven't learned that yet.
. . .
Judge: Did your mom and dad tell you that, what happens if you don't tell the truth?
K.S.: Yes.
Judge: What did they tell you? Are you supposed to tell the truth?
K.S.: Yes.
Hearing Tr., Apr. 4, 2004, 31:5-19; 32:4-8; 32:18-23. The trial court and K.S. also discussed whether K.S. had been coached by anybody prior to testifying. K.S. admitted that his Uncle Craig had practiced with him. Id. at 32-33. However, K.S. told the trial court that nobody had tried to change his story and he would tell the court what he actually knew. Id. at 33.
 {¶ 7} After the trial court concluded its questioning, the attorneys were permitted to question the child. The following discussion occurred between Sean's counsel, Scott Gordon, and K.S.:
Gordon: did Uncle Craig tell you what day this happened on or anything like that?
K.S.: No.
Gordon: Did he tell you what Sean did to you?
K.S.: silence
Gordon: Is that a yes?
K.S.: Yes.
Gordon: Ok. Did he tell you how Sean did that to you?
K.S.: Yes.
Id. at 35. The State, represented by Martin Burchfield, then questioned K.S.
Burchfield: K.S. did Uncle Craig tell you anything that happened?
K.S.: Yes.
Burchfield: Did he tell you anything that hadn't happened?
K.S.: inaudible
Burchfield: You haven't answered my question bery [sic] well.
You told Uncle Craig anything that actually didn't happen or did you tell us what happened?
K.S.: I told what happened.
Burchfield: Nobody's told you to say anything that was a lie or untruth is that right?
K.S.: Yes that's right.
Id. at 35-36. Thereafter, the trial court found K.S. competent to testify and noted, "[t]he issue of competency for testimony is basically whether or not a child can understand and relate what happened and remember what happened. And certainly there was evidence that he was able to do that. That he was remembering what happened." Id. at 37.
 {¶ 8} Clearly, the trial court did not recite the list of factors articulated in Frazier, supra. However, our review of the record does not reveal that the trial court acted arbitrarily or unconscionably. K.S.'s testimony shows he had the ability to observe facts and to recollect those observations. K.S. seemed confused as to dates and times, but in our experience, that is typical for a five or six year old child. However, K.S. clearly told the trial court what Sean had done to him, with only a few digressions. From K.S.'s responses to general questions, he seems to be an attentive child. He told the court who lived in his home at the time of the offense, who lives in his home currently, about "fishing" at a friend's church, and about which words he had recently spelled in school. K.S. clearly knew the difference between telling the truth and telling a lie. Although he testified he had not learned what happens when he lies, he knew he was at "the Judge's", knew he had to tell the truth, and knew that telling a lie is bad.
 {¶ 9} Sean contends that K.S. was not competent to testify because Uncle Craig had coached him. K.S.'s testimony concerning Uncle Craig is ambiguous. Nobody ascertained what Uncle Craig and K.S. practiced or how they practiced. Additionally, nobody ascertained which part of K.S.'s testimony, if any, had been influenced. In this case, the issue of coaching relates to credibility, not competency. The trial court was in the best position to hear the testimony and observe the demeanor of the witness. Reviewing a cold record with several inaudible responses does not convince us that the trial court acted arbitrarily or unconscionably in finding K.S. competent. The first assignment of error is overruled.
 {¶ 10} In his second assignment of error, Sean contends that the trial court's finding of guilt was against the manifest weight of the evidence. Weight of the evidence concerns "the inclination of the greateramount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. In determining whether the trial court's finding is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new hearing ordered. See State v. Adkins, 3rd Dist. No. 5-97-31, 1999-Ohio-881 (citation omitted). However, determinations concerning the weight of the evidence and credibility of the witnesses are better left to the trier of fact because it is able to observe the witnesses' demeanors and hear the testimony. State v. DeHass (1967),10 Ohio St. 2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 11} In order to find a juvenile delinquent, the State must prove its case beyond a reasonable doubt. In re Tressler, 3rd Dist. No. 11-02-06, 2002-Ohio-6276, at ¶ 12 (citing In re Winship (1970),397 U.S. 358). In this matter, Sean was charged with rape. R.C. §2907.02(A)(2) states in pertinent part:
[n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: . . . (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
In its judgment entry, the trial court found that the State had failed to prove the elements of rape beyond a reasonable doubt. Specifically, the court noted the State failed to prove sexual conduct. See J. Entry, Dec. 7, 2004. Sexual conduct is defined in pertinent part as:
anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
R.C. 2907.01(A). The trial court found that the only direct testimony concerning the offense was from K.S., who could not confirm whether penetration had occurred. See J. Entry. Additionally, Ruhlen's examination was not conclusive as to penetration. Id.
 {¶ 12} The trial court, sua sponte, found Sean guilty of attempted rape in violation of R.C. 2923.02(A), which states, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." A trial court may sua sponte find a defendant guilty of a lesser included offense, and attempt is a lesser included offense of rape. See White v.Maxwell (1963), 174 Ohio St. 186, 188, 187 N.E.2d 878; Juv.R. 22(B); Crim.R. 7(D); State v. Robinson (9th Dist. Mar. 15, 1995), No. 94CA005788, 1995 WL 110134 (citing State v. Johnson (1988),36 Ohio St. 3d 224, 522 N.E.2d 1082). During the hearing, K.S. testified that Sean had put his "pee-pee" into K.S.'s "butt". See Hearing Tr., 45:5; 50; 53:15-17. K.S. also testified that Sean put his mouth on K.S.'s "pee-pee and butt". Id. at 48:6-11; 50. K.S. testified accurately as to what his body parts were and expressed an understanding of how they function.
 {¶ 13} The trial court also reviewed Ruhlen's deposition. Ruhlen testified as follows: "[a]t 3:00, which would be on the left side of the anal opening, there is a tear that is actually outside of the anal opening. It's a triangular shaped wound and it represents what is most likely to be an injury arising from outside the anus." Dep. Ruhlen, Michael, M.D., Nov. 23, 2004, 14:13-18; Ex. 1. Ruhlen called the injury an anal fissure, which is "consistent with an attempted insertion of an object into the anal opening." Id. at 14:21-23. The examination did not reveal whether penetration had actually occurred, nor did it reveal what type of object had caused the injury. See Id.
 {¶ 14} Sean's parents and Penny Ramos, Sean's neighbor, presented evidence of an alibi. The witnesses testified that Sean had been at home with his family during the weekend of the offense. The trial court, being in the better position to hear the testimony and observe the witnesses' demeanors, found Scott Danylchuk, Tina Danylchuk, and Penny Ramos to be less credible than the State's witnesses. See J. Entry.
 {¶ 15} In finding Sean guilty of attempted rape, the trial court stated in pertinent part:
[t]he complaint charged Sean with a violation of R.C. 2107.02 [sic]. That section requires to [sic] state to prove "sexual conduct". . . . Unfortunately[,] K.S. was not able to describe exactly what happened. It is unclear if any fellatio occurred between Sean and K.S. (K.S. seemed to be discussing brother Cole at this time) and he just knew that his butt "hurt". Dr. Ruhlen's testimony also could not prove beyond a reasonable doubt that any penetration had occurred.
Id. The trial court went on to find Sean guilty of attempted rape based on the Ohio Supreme Court's decision in State v. Wells (2001),91 Ohio St. 3d 32, 740 N.E.2d 1097 and the evidence presented by K.S. and Ruhlen. In Wells, supra, the Ohio Supreme Court held that an offender who makes contact with a victim's buttocks in a failed attempt to make anal penetration will be guilty of attempted rape. Wells, supra at 34.
 {¶ 16} Reviewing this record, we cannot find that the trial court clearly lost its way and created a manifest miscarriage of justice. K.S.'s testimony reveals that Sean put his "pee-pee" in K.S.'s "butt". K.S. testified about the amount of pain Sean caused, and he testified about many specific facts leading up to the offense, such as which game the cousins were playing, which action figures they were playing with, and how his pants were taken off. Combined with Ruhlen's testimony concerning K.S.'s anal fissure and the cause of such an injury, the evidence clearly supports a conviction for attempted rape. The trial court was in the better position to make determinations on credibility, and our review of the record finds nothing to discredit its decisions. The second assignment of error is overruled.
 {¶ 17} The judgment of the Van Wert County Common Pleas Court Juvenile Division is affirmed.
Judgment affirmed.
 Rogers and Shaw, JJ., concur.