[Cite as *State v. Dover*, 2014-Ohio-2303.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No.   2013-CA-58 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-511B |
| v. | : | |
| | : | |
| JEREMY DOVER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of May, 2014.

. . . . . . . . . . .

LISA M. FANNIN, Atty. Reg. #0082337, Clark County Prosecutor's Office
50 East Columbia Street, 4th Floor, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

BRIAN A. SMITH, Atty. Reg. #0083620, 503 West Park Avenue, Barberton, Ohio 44203
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Jeremy Rashaun Dover appeals from his conviction and

sentence for Aggravated Robbery (Use of Deadly Weapon), in violation of R.C. 2911.01(A)(1), a felony of the first degree, with a firearm specification. Dover contends that the jury's finding that a deadly weapon was used in the commission of the offense is against the manifest weight of the evidence, that the trial court erred in overruling his request for a jury instruction on the lesser-included offense of Theft, and that the trial court abused its discretion by imposing the maximum prison term.

{¶ 2}     We conclude that the judgment is not against the manifest weight of the evidence, that the trial court did not err by overruling Dover's request for a jury instruction on Theft, and that the trial court did not err in imposing a maximum prison term. Accordingly, the judgment of the trial court is Affirmed.


## I.   The Offense

{¶ 3}     Diana Dixon, the President of the Springfield Liedertafel, a German singing club, withdrew about $1,750 in cash from her checking account at a Fifth Third branch bank in a Kroger store on Bechtle Avenue, in Springfield. The withdrawal represented the starting cash for the Liedertafel summerfest. She received about $300 in quarters, the rest in paper currency. It was about 4:00 in the afternoon on July 13, 2012. She already had $250 in her purse.

{¶ 4}     Dover and two confederates, Richard Becraft and Laune Dozier, were also in the bank. Becraft was cashing a check.

{¶ 5}     After Dixon got the cash withdrawal, she made some dairy purchases in the Kroger store. After going through the checkout line, she left the Kroger store, and walked to her car. When she was ten to twenty feet from her car, she was robbed of her purse, at gunpoint.

Dover was the man who held the gun to her back and demanded that she give the money or he would kill her. Becraft was the man who took the purse. Dozier was also present.

{¶ 6} Once the three men had the purse, they ran off. A box containing the $300 in quarters was under Dixon's purse. It was not taken. The rest of Dixon's money, as well as her cell phone and other items, was in the purse. Dixon used another woman's cell phone to call 911 and report the robbery.

{¶ 7} Cheryl Sample, who was in a car with her granddaughter and husband, saw three men running away from the Kroger store with a woman's purse. She then saw the three men get into a van being driven by a woman, and drive off. Sample and her husband, who was driving, followed the van. Sample called 911.

{¶ 8} At some point, Sample and her family lost the van, but after circling around, they found it again, abandoned. The purse and some of its contents were on the ground near the van. The money and Dixon's cell phone were never recovered.

## II. The Course of Proceedings

{¶ 9} Dover was charged by indictment with Aggravated Robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree, with a firearm specification; with Having a Weapon While Under a Disability, in violation of R.C. 2923.13(A)(2), a felony of the third degree; and with Having a Weapon While Under a Disability, in violation of R.C. 2923.13(A)(3), a felony of the third degree. Following a jury trial, Dover was convicted of Aggravated Robbery, with the firearm specification, but he was acquitted of the two weapons counts.

{¶ 10} Dover was sentenced to eleven years in prison, the maximum sentence for

Aggravated Robbery, with an additional consecutive sentence of three years for the firearm specification, for a total of fourteen years in prison. From his conviction and sentence, Dover appeals.

### III. A Procedural Note

{¶ 11} State's Exhibit 4-A purports to be a compact disc containing an audiovisual recording of Dover's police interrogation. The record reflects that it was played for the jury and admitted in evidence at the trial.

{¶ 12} This court was unable to retrieve any audio or visual signal from State's Exhibit 4-A. Upon being asked to assist this court, counsel for the State produced a compact disc on which is written "12-34 324, 7-20-12, 1410 to 1436 HRS, JEREMY DOVER," and asserted that it contains a copy of the audiovisual recording admitted as State's Exhibit 4-A. This court has been able to play this compact disc on its office computers. Dover's appellate counsel was kind enough to play this compact disc immediately following the oral argument of this case, and confirms that it does, indeed, contain an authentic copy of the audiovisual recording of Dover's police interrogation. Accordingly, we have added this compact disc to our record, and are treating it as an authentic representation of the recording of Dover's police interrogation that was admitted in evidence in the trial court as State's Exhibit 4-A. The compact disc marked as State's Exhibit 4-A remains in our record, as well.

### IV. The Jury's Finding that Dover Used a Firearm in the Commission of the Offense Is Not Against the Manifest Weight of the Evidence

{¶ 13}  Dover's First Assignment of Error is as follows:

APPELLANT'S CONVICTIONS FOR ROBBERY AND HAVING A WEAPON UNDER DISABILITY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14}  Dover was not convicted of Having a Weapon While Under a Disability.

{¶ 15}  Dover's argument in support of this assignment of error depends upon his assertion that the jury lost its way in finding that Dover used a gun in the commission of the robbery.  Although Dover points out the apparent inconsistency in the jury's verdicts, we conclude that this has no bearing upon the issue of whether Dover's Aggravated Robbery conviction is against the manifest weight of the evidence.  Assuming that the Aggravated Robbery conviction is inconsistent with the acquittals on the weapons charges, the jury could just as easily have lost its way in its verdicts of acquittal.

{¶ 16}  In support of Dover's assertion that the jury lost its way in finding that he used a gun in the commission of the robbery, Dover argues that there is no other evidence in the record that he used a gun besides Dixon's testimony.  No other witnesses saw a gun, and no gun was found.  We find this argument unpersuasive.  No other witnesses were present when the robbery occurred.  Two witnesses who testified at the trial went to aid and comfort Dixon, who was obviously in distress, but shortly after the robbery and after the three robbers had fled.  Cheryl Sample saw the three men fleeing, but after they had left the Kroger parking lot where the robbery occurred.  In our view, the fact that these witnesses did not see a gun is not inconsistent with Dixon's testimony.  The robbery of Dixon's purse having been completed, it would be natural for Dover to conceal it on his person while fleeing the scene.  And the fact that a gun was not found is also unremarkable.  Dixon's cell phone and the money were not found either.

There would not seem to have been any reason for Dover to have left the gun behind, where it could be found.

{¶ 17} Dover also argues that Dixon's trial testimony that a gun was placed at her back is inconsistent with her statement during the 911 call that a gun was pointed at her head. We have listened to the recording of the 911 call. As might be expected, Dixon was sobbing and upset, with the 911 operator repeatedly having had to ask Dixon to take deep breaths, in order to obtain a coherent account. The jury could reasonably discount the inconsistency in Dixon's 911-call reference to the gun being pointed at her head as having been a misstatement attributable to her agitated emotional state.

{¶ 18} Finally, Dover argues that Dixon's testimony is unworthy of belief, because she testified that she turned to her right and saw the gun barrel pointed at her back, but Becraft was standing in front of Dover, so Dixon would not have been able to see what she claimed to have seen. The testimony upon which this argument is based is worth quoting in full:

Q. And where in your back did he stick it [the gun]?

A. Probably, pretty close to right here. Like, right in the middle of my back, where my hand is. Where your ribs are. I don't know. Right here.

Q. The middle of your back. So, you turned and saw it, correct?

A. Yes, sir.

Q. And where was the man in the white t-shirt [Becraft], at that time?

A. The man in the white t-shirt would have been to my right.

Q. And the man with the gun, where was he?

A. He was in back of me.

Q. Directly behind you?

A. No. He was more to my right, behind the gentleman, I would say, that took my purse. But he was behind me, right here. He was to my right. If I looked to my right, he was right here.

Q. So, the man you've identified as Jeremy [Dover], was to your right?

A. He was in back. I – I don't know. Who – is Jeremy the one in the white shirt? Is that what you're asking?

Q. The teal shirt.

A. The teal colored shirt would have been behind me.

Q. The man behind you, directly behind you?

A. I don't know if he was directly behind me, but he was behind me, yes.

Q. And the man that took your purse [Becraft] was in front of him?

A. Yes.

Q. To your right?

A. Yes.

{¶ 19} In our view, the jury could reasonably have taken the above-quoted testimony to mean that Dover was behind Dixon, somewhat to the right of the line extending directly backward from the center of Dixon's back, and Becraft was standing to Dixon's right, which would have put Becraft in front of Dover, from Dixon's point of view, but not necessarily between Dixon and Dover.

{¶ 20} To be sure, the discrepancy between Dixon's 911-call statement and her trial testimony; the argument that her testimony should be construed to mean that Becraft was standing between Dixon and Dover, preventing Dixon from seeing the object allegedly pushed

into her back; and the fact that no one else saw a gun, and no gun was recovered, are matters that Dover could fairly argue to the jury as a basis for finding reasonable doubt. But none of these points, taken individually or collectively, persuade us that the jury lost its way in choosing to credit Dixon's testimony that Dover pointed a gun at her back and demanded that she give them her purse, or he would kill her.

{¶ 21} Dover's First Assignment of Error is overruled.

### V.   The Trial Court Did Not Err by Imposing a Maximum Prison Sentence

{¶ 22} Dover's Second Assignment of Error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT IMPOSED THE MAXIMUM SENTENCE ON APPELLANT.

{¶ 23} In *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 29 (2d Dist.), we held that we would no longer use an abuse-of-discretion standard in reviewing a sentence in a criminal case, but would apply the standard of review set forth in R.C. 2953.08(G)(2). Since then, opinions from this court have expressed reservations from some judges of this court whether that decision in *Rodeffer* is correct. *See, e.g., State v. Garcia*, 2d Dist. Greene No. 2013-CA-51, 2014-Ohio-1538, ¶ 9, fn.1. In the case before us, we find no error in the sentence imposed under either standard of review.

{¶ 24} In imposing sentence, the trial court set forth the following analysis:

THE COURT: All right. I have reviewed the pre-sentence report. The first thing I note is the Ohio Risk Assessment Survey was completed, and the Defendant scored high on the risk assessment. The Court also finds factors

regarding more or less serious nature of the offense, the victim of this offense has suffered serious psychological and economic harm as a result of the offense. I don't find any factors making it less serious.

This offense occurred on July 13, 2012. At that time, the Defendant was out on bond for a Municipal Court case. The Defendant has been adjudicated a delinquent child and has a history of criminal convictions, and the Defendant has not been rehabilitated to a satisfactory degree after being adjudicated a delinquent and has not responded favorably to sanctions previously imposed. Like the Prosecutor, I find no genuine remorse for this offense.

The Defendant has served prior prison terms, both, for robbery in 2002, for drug abuse in 2006, for weapons under disability in 2008.

This particular crime seems to be one of convenience and opportunity in that the victim happened to be at the bank getting a large amount of cash out while the Defendant and his friends, the co-Defendants,[1] were in line behind her. The plan appears to have been placed into effect quite rapidly. The Defendant had a firearm on or about his person, which I don't believe was brought to the bank for the purpose of robbing this victim, but he simply had a firearm, which would indicate to the Court that should an opportunity arise, he was ready and willing to participate in the commission of a crime.

It is the finding of the Court that to meet the standards in the sentencing statutes, to protect the community and punish the offender, the offender should be

---

[1] Dover was tried separately from his co-defendants.

sentenced to a term of imprisonment of 11 years for the aggravated robbery. Further, for the firearm specification, the Defendant is sentenced to three years in prison, which is required under the statute and is required to be served consecutive to the 11 years for a total of 14 years.

{¶ 25}  We find nothing wrong with the trial court's reasoning.  Dover's prior record indicates a substantial risk of recidivism.  His juvenile record includes five offenses and two probation violations; his adult record of prior offenses includes ten offenses and two, three-year prison terms, for Robbery and for Having a Weapon While Under a Disability.  And the circumstances of the offense in the case before us indicate that he has problems with impulse control.  In short, the trial court could find, as it evidently did, that Dover represents a serious crime of violence just waiting to be triggered by an opportunity.

{¶ 26}  Dover's Second Assignment of Error is overruled.


## VI.   The Trial Court Did Not Err by Overruling
## Dover's Request for a Jury Instruction on Theft

{¶ 27}  Dover's Third Assignment of Error is as follows:

THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE ELEMENTS OF THE LESSER INCLUDED OFFENSE OF PETTY THEFT CONSTITUTED PLAIN ERROR.

{¶ 28}  Dover's argument in support of this assignment of error is addressed generally to Theft, in violation of R.C. 2913.02.  Petty Theft is defined as the theft of property or services of a value of less than $1,000, and there is nothing in the record to suggest that the contents of

Dixon's purse, which included a cash withdrawal of approximately $1,450 in paper currency and another $250 that Dixon already had in her purse, was less than $1,000. We will, therefore, analyze this assignment of error as relating to the trial court's failure to have instructed the jury on Theft, in violation of R.C. 2913.02(A), (B)(2), a felony of the fifth degree.

{¶ 29} Curiously, Dover presents this assignment in terms of plain error, indicating that because he did not object to the jury instructions, he has forfeited all but plain error. But the record reflects that he requested an instruction on Theft, and renewed that request immediately after the trial court had instructed the jury. Therefore, we will analyze this assignment of error under conventional error standards, not the heightened standard required to find plain error.

{¶ 30} Dover's initial request for an instruction on Theft resulted in the following colloquy:

THE COURT: * * * . I received a request this morning from the Defense for an instruction on a lesser include [sic] offense of theft. Does the State wish to be heard on that issue?

MR. KINSLER [representing the State]: Your Honor, would you only be including lesser included offense of theft?

THE COURT: I've only been asked for the lesser included offense. I'm trying to determine whether or not that's been asked on any other instruction, other than that.

MR. KINSLER: Your Honor, the only evidence before the jury to consider is, basically, the evidence that was presented by Ms. Dixon was she was threatened at gun point, threatened, and her purse was stolen by her [sic] by the

participants and that accomplice Becraft that she described as taking her purse. She identified Mr. Dover as the individual who pointed the gun at her, made a threat against her life, simultaneously, with the purse being snatched. At best, my point being, I don't understand what justification there would be a lesser include [sic] of theft in that the Defendant participated in the way that Ms. Dixon described or he did not. I don't know if there is any evidence before the jury that it wasn't.

THE COURT: Mr. Griffin, do you wish to put anything on record regarding cause?

MR. GRIFFIN [representing Dover]: The threat or intimidation would have been, Ms. Dixon's statement that the person said to her, give me the money, bitch, or I'll kill you. I feel that would qualify as both a threat and an intimidation.

THE COURT: That is correct. In conjunction with the fact that she testified that he was holding a gun to her back.

MR. GRIFFIN: But if the jury chooses to believe that there was no gun, because none was ever found or anything like that, then I don't think it it [sic] should be left with either aggravated robbery or nothing.

MR. KINSLER: May I?

THE COURT: Yes.

MR. KINSLER: Even if the jury were to not believe, to not believe that there was a firearm, but believes the Defendant made the threat to Ms. Dixon

described, that will would [sic] not be a theft.   That would be be [sic] a threat and a robbery, under the [R.C. 2911.02] A-2 sub-section, as opposed to being a theft. My point being, Your Honor, if the Court was going to consider a lesser included, I think it would be the A-2 sub-section, robbery, rather than theft.

THE COURT: The Court, agreeing with the State's argument, there has been no other lesser instruction [sic] so the matter will go to the jury on the instruction as indicted [sic].

MR. GRIFFIN: Thank you, Your Honor.

{¶ 31}  After the jury was instructed, but before it retired to deliberate, the trial court gave both counsel an opportunity to make a record on the subject of the jury instructions, and Dover responded:

THE COURT: Counsel for the Defense wish to put anything on record regarding the jury charge?

MR. GRIFFIN: Just our earlier request, Your Honor.

{¶ 32}  Since Dover had made no earlier request concerning the jury instructions other than his request that the jury be instructed on the lesser included offense of Theft, we construe the above-quoted reference to relate back to that request.  Dover never requested a jury instruction on the lesser-included offense of Robbery, despite the State's having indicated that he might well be entitled to that instruction.   This may well have been trial strategy, Dover having decided that he did not want to take a chance that the jury would find him guilty of Robbery if it did not find the State to have proven all of the elements of Aggravated Robbery beyond reasonable doubt.

{¶ 33}  An instruction on a lesser-included offense should only be given where the

evidence warrants it, and where "the evidence does not support a conviction on a lesser included offense, it would be erroneous to instruct the jury thereon, as to do so would confront the jury with the choice of reaching an unreasonable conclusion." *State v. Johnson*, 36 Ohio St.3d 224, 228, 522 N.E.2d 1082 (1988). In the case before us, based on the evidence in the record, to have instructed the jury on Theft would have given them the choice of reaching an unreasonable conclusion. The jury might reasonably have concluded that no firearm was involved, in which event they might have found Dover not guilty of Aggravated Robbery, but in our view there is no reasonable view of the evidence from which the jury could have found Dover guilty of Theft, but not guilty of Robbery. The only three outcomes reasonably supported by the evidence were: (1) a conviction for Aggravated Robbery, if the jury concluded that Dover put a gun to Dixon's back and told her to give up her purse or he would kill her; (2) a conviction for Robbery, if the jury concluded that Dover did not use a gun, but told Dixon to give up her purse or he would kill her; or (3) an acquittal of either charge, if the jury decided not to credit the State's evidence.

{¶ 34} A conviction for Theft would have required the jury to have found that Dover persuaded Dixon to relinquish her purse, but without having threatened her with the infliction of physical harm, which would have made the offense Robbery under R.C. 2911.02(A)(2). The only evidence in the record that arguably could have supported this result was a statement made during Dover's interrogation by the detective investigating the robbery. That statement was that Dover had a conversation with Dixon while Becraft snatched Dixon's purse. For the jury to have concluded that the conversation Dover had with Dixon consisted of nothing more than a distraction to enable Becraft to seize the purse, would have required the jury to speculate concerning the contents of that conversation. Dover did not say anything regarding the nature of

that conversation; therefore, the only characterization of that conversation in the record is Dixon's testimony that Dover told her he would kill her if she did not give up her purse. We conclude, therefore, that the trial court did not abuse its discretion in declining to give an instruction for Theft.

{¶ 35} Dover's Third Assignment of Error is overruled.

## VII. Conclusion

{¶ 36} All of Dover's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Lisa M. Fannin
Brian A. Smith
Hon. Richard J. O'Neill

Case Name:    *State of Ohio v. Jeremy Dover*
Case No:          Clark App. No. 2013-CA-58
Panel:            Fain, Donovan, Hall
Author:           Mike Fain
Summary: