OPINION
{¶ 1} Appellant, Steven J. Pohl ("Pohl"), appeals his conviction for receiving stolen property. The property in question was a stolen license plate, which the arresting officer observed on Pohl's vehicle. Pohl asserts that the officer did not have probable cause to arrest him and that his statement was not voluntary. After a review of the record, we affirm the judgment entry of the trial court.
 {¶ 2} On March 14, 2004, at 11:30 a.m., Pohl was stopped at a traffic light after exiting State Route 2 eastbound. Wickliffe Police Officer Reigner was traveling westbound on Lakeland Boulevard at the time and observed a multi-colored pipe in Pohl's mouth. From past experience, the officer believed the pipe to be a marijuana pipe and turned his vehicle around to stop Pohl's vehicle. The officer also observed Pohl make a furtive gesture so as to duck down and then reappear without the pipe, making a swiping motion on his face. Prior to the actual stop, the officer ran Pohl's license plate and found it to be stolen from a nearby Midas shop. As Pohl exited his vehicle, he had a recently lit cigarette in his mouth.
 {¶ 3} The officer placed Pohl in the back of his cruiser and asked him if there was anything illegal inside his vehicle. Pohl advised the officer that a marijuana pipe was under the armrest and that there was also marijuana in the car. Pohl was handcuffed in the back of the police cruiser while the officer searched his car. The officer located the pipe and the marijuana. Pohl was then transported to the police station, where he was booked and given Miranda warnings.[1] The Miranda warnings were contained on a preprinted document, which called for Pohl's initials and signature. Once Pohl initialed and signed the document, the officer asked him questions about where he got the stolen license plate. Pohl indicated he got the plate from a vehicle at a local Midas shop.
 {¶ 4} During the questioning at the police station, Pohl was also asked about his medical condition, both physical and mental. In answer to various questions on the booking sheet, he indicated that he had suffered from depression and that he had thoughts about hurting himself. Out of caution, Sergeant Hengst, the officer on duty, recommended that Pohl be taken to Laurelwood Hospital for an assessment. The police gave the following narrative to the doctor at Laurelwood about Pohl's statement at the police station:
 {¶ 5} "Advised he has continuous thoughts of suicide, has been treated previously for same, and conveyed suicide ideations to officers at time of arrest and during booking. [Pohl stated:] `I don't want to wake up ever again.'"
 {¶ 6} A doctor at Laurelwood assessed Pohl and released him back to the police.
 {¶ 7} The grand jury returned a single-count indictment against Pohl for receiving stolen property, a violation of R.C.2913.51(A), and a felony of the fifth degree.
 {¶ 8} Pohl filed a motion to suppress. At the hearing on the motion, a videotape of the booking procedure was played to the court. The videotape reflected the dialogue concerning theMiranda warnings given to Pohl and the dialogue with Officer Reigner and Sergeant Hengst concerning Pohl's medical condition. The court granted the motion to suppress with respect to statements given by Pohl while detained in the police cruiser, but before receiving any Miranda warnings, and denied the motion with respect to all other assertions.
 {¶ 9} Thereafter, Pohl entered a "no contest" plea to the sole count of receiving stolen property. On October 6, 2004, the trial court found him guilty and sentenced him to three years of community control sanctions. In addition, Pohl was sentenced to jail for seventy days, with credit for twenty-six days; two hundred hours of community service; a jail treatment program; ordered to an outpatient substance abuse program and to receive psychiatric treatment once a month; and was ordered to take his medication, abstain from drugs or alcohol, attend Alcoholics Anonymous meetings, and maintain full employment. Pohl timely filed his appeal from that sentencing order to this court.
 {¶ 10} Pohl raises a single assignment of error in this court:
 {¶ 11} "The trial court erred in denying defendant-appellant's motion to suppress evidence obtained from the defendant-appellant on March 14, 2004."
 {¶ 12} In support of this assignment of error, Pohl makes two arguments. First, he asserts that Officer Reigner did not have probable cause to stop his vehicle based on his belief that Pohl had a marijuana pipe in his mouth and where he was smoking a cigarette when he exited his vehicle. Secondly, Pohl asserts that statements made during the booking procedure should have been suppressed because they were obtained while he was in a depressed state and expressing thoughts of suicide.
 {¶ 13} "`Appellate review of a motion to suppress presents a mixed question of law and fact.'"[2] The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence.[3] Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard.[4]
 {¶ 14} This court has previously articulated the standard for an officer to make an investigative stop. In the case of Statev. Walker this court stated:
 {¶ 15} "The investigative stop exception to the Fourth Amendment warrant requirement allows a law enforcement officer to stop a motorist when he has reasonable suspicion based upon reasonable and articulable facts, that criminal behavior has occurred. * * * Such stops must be examined by reviewing the totality of the circumstances that surround the stop."[5]
 {¶ 16} However, our analysis does not rest on whether Officer Reigner had a reasonable suspicion to stop Pohl's vehicle. Instead, there was probable cause for the stop in light of the overriding fact that the officer determined that the license plate on Pohl's vehicle was stolen. The officer checked the license plate registration on Pohl's vehicle prior to making the actual traffic stop and found that the license plate was stolen. This court has previously held that "a police officer does not need to possess reasonable suspicion to conduct a random check of a license plate."[6] In such case, a check of a person's Bureau of Motor Vehicle records does not involve an intrusion or restraint and, therefore, Fourth Amendment rights are not implicated.[7] Thus, Officer Reigner had a sufficient reason to stop Pohl's automobile based upon probable cause to do so. We do not find such stop to have been illegal.
 {¶ 17} Pohl further argues that the statements made to the police officers during the booking procedure should have been suppressed because they were made while he was in a depressed state and expressing thoughts of suicide. Though given Miranda
warnings, he was never expressly asked to waive his Miranda
rights, and, therefore, Pohl argues that the statements were not voluntary.
 {¶ 18} This court has held that the totality of the circumstances must be considered in determining whether a statement is voluntary.[8] In the case of State v. Young,
this court noted the following language from the Supreme Court of Ohio:
 {¶ 19} "`"In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."'"[9]
 {¶ 20} There must be some evidence of coercion on the part of the police in order to trigger an analysis of the totality of the circumstances.[10] As stated by the United States Supreme Court, "coercive police activity is a necessary predicate to the finding" that a suspect involuntarily waived his Miranda rights and voluntarily confessed.[11] Absent evidence that "[a suspect's] `will was overborne and his capacity for self-determination was critically impaired' because of coercive police conduct," a suspect's decision to waive his Miranda
rights and confess will be deemed to be voluntary.[12]
 {¶ 21} Pohl argues that he was in a depressed mental state. However, there is nothing in the record to reflect that the officers took advantage of his depressed mental state. In fact, Pohl was transported to Laurelwood Hospital for a psychiatric evaluation in light of the statements made to the officers and was released back to their custody after the evaluation. The videotape that was played at the suppression hearing shows no duress, mistreatment, or undue psychological inducement. We view this scenario to be similar to that of State v. Tibbetts, where the Supreme Court of Ohio upheld the trial court's finding of voluntariness:
 {¶ 22} "We also reject the claim that the medication and recent hospitalization at a psychiatric ward rendered Tibbetts's statements involuntary. The interrogating officer testified that he fully advised Tibbetts of his rights and that Tibbetts was calm and cooperative. The officer also testified that Tibbetts appeared to understand the questions asked of him and did not seem intoxicated during the questioning. The trial court's findings were consistent with this testimony and we are in no position to question them; we must defer to the trial court's factual findings concerning voluntariness so long as the record supports them."[13]
 {¶ 23} Further, the fact that Pohl was not expressly asked to waive his Miranda rights is of no consequence, where the totality of the circumstances indicates that his statement was voluntary. "It is settled law that a Miranda waiver need not be expressly made in order to be valid. North Carolina v. Butler
(1979), 441 U.S. 369, 373. * * * A court may infer a waiver from the suspect's behavior, viewed in light of all the surrounding circumstances."[14] In sum, the statements made by Pohl were not coerced, but were given after he was advised of hisMiranda rights and after he chose to waive those rights by responding to the questions of Officer Reigner.
 {¶ 24} Pohl's assignment of error is without merit.
 {¶ 25} For the reasons indicated, the judgment of the trial court is affirmed.
Rice, J., O'Toole, J., concur.
[1] Miranda v. Arizona (1966), 384 U.S. 436.
[2] State v. Lyons, 11th Dist. No. 2004-T-0035,2005-Ohio-4649, at ¶ 18, quoting State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.
[3] State v. Burnside, supra, at ¶ 8, citing State v.Fanning (1982), 1 Ohio St.3d 19.
[4] State v. Burnside, supra, at ¶ 8, citing State v.McNamara (1997), 124 Ohio App.3d 706.
[5] (Citations omitted.) State v. Walker (Nov. 15, 1996), 11th Dist. No. 96-G-1966, 1996 Ohio App. LEXIS 4962, at *6. See, also, State v. Held (2001), 146 Ohio App.3d 365.
[6] State v. Rendina, 11th Dist. No. 2001-L-199, 2002-Ohio-3582, ¶ 10.
[7] Id.
[8] State v. Young, 11th Dist. No. 2002-A-0093,2004-Ohio-342.
[9] Id. at ¶ 11, quoting State v. Twyford (2002),94 Ohio St.3d 340, 360, quoting State v. Edwards (1976),49 Ohio St.2d 31, paragraph two of the syllabus.
[10] State v. Dailey (1990), 53 Ohio St.3d 88, 91-92, citingColorado v. Connelly (1986), 479 U.S. 157, 170.
[11] Colorado v. Connelly, supra, at 167.
[12] Colorado v. Spring (1987), 479 U.S. 564, 574, quotingCulombe v. Connecticut (1961), 367 U.S. 568, 602; see, also,State v. Dailey, supra, at 91.
[13] State v. Tibbetts (2001), 92 Ohio St.3d 146, 155.
[14] State v. Murphy (2001), 91 Ohio St.3d 516, 518.